PROVINE v. FIRST NAT. BANK OF HONEY GROVE et al. (No. 1501.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 18, 1915. On Motion for Rehearing, Dec. 2, 1915.)

1. TROVER AND CONVERSION ⬅4 — PARTIES LIABLE.

Even if plaintiff had a lien on cotton, which C., his tenant, raised, and stored in a warehouse, there was no conversion by defendant bank, making it liable to plaintiff, it not buying the cotton, but merely holding the warehouse receipts for C., and at his direction, on his selling the cotton to S. Bros., delivering the receipts to them and collecting the price from them, and crediting his account therewith, he afterwards checking out part of it to himself and giving the bank a check for the balance in payment of his debt to it.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 25–37; Dec. Dig. ⬅4.]

On Motion for Rehearing.

2. ASSIGNMENTS ⬅50—"EQUITABLE ASSIGNMENT"—PROMISE TO PAY FROM FUND.

An agreement to pay a debt out of a certain fund, being a mere promise, does not operate as an equitable assignment of the fund or any part of it.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 99–105; Dec. Dig. ⬅50.

For other definitions, see Words and Phrases, First and Second Series, Equitable Assignment.]

Appeal from Fannin County Court; S. F. Leslie, Judge.

Action by Mrs. L. A. Provine against the First National Bank of Honey Grove and others. From the judgment so far as favorable to the bank, plaintiff appeals. Affirmed.

J. W. Gross, of Bonham, for appellant. J. M. Baldwin, of Honey Grove, for appellees.

WILLSON, C. J. Appellant, plaintiff below, sought and recovered judgment against appellee R. H. Coleman for the sum of $462, being the principal sum and interest thereon due on a promissory note for $450 payable to her order October 15, 1914, made by said Coleman February 28, 1914. She also sought, but was denied, judgment against the appellee bank for the sum of $380, the value of certain cotton which she alleged said bank wrongfully converted to its own use at a time when she had a landlord's lien thereon.

The contention made here is that the judgment is erroneous in so far as it denied to appellant a recovery against the bank.

It appeared from the testimony that on February 28, 1914, appellant leased certain land to Coleman for that year, and that the note sued upon represented the rent he agreed to pay for same. Coleman gathered ten bales of cotton off the land. On September 26, 1914, he removed five of the bales therefrom and stored them, with six bales grown by him on other land, in a warehouse in Honey Grove; and on October 16, 1914, he removed the other five bales from the land and stored them, with twelve bales grown by him on other land, in the same warehouse. At the time he so stored the cotton Coleman took the warehouseman's receipt therefor, and had the cotton insured in his own name as the owner thereof. The receipts were delivered by Coleman to the appellee bank, and that it thereafterwards held same for him. On December 5, 1914, Coleman sold the ten bales of cotton grown by him on appellant's land and the eighteen bales grown by him on other land to Scott Bros., to whom he then directed the appellee bank to have same transferred. The appellee bank had the cotton transferred as ·directed, and, having collected of Scott Bros. $960 they had agreed to pay for same, on that day credited Coleman with that sum and delivered to him a deposit slip covering same. Coleman was indebted to the appellee bank, and on December 7, 1914, paid it a part of the sum he owed it by delivering to it a check for $880 of the $960 deposited with it to his credit as the proceeds of the sale of the cotton. On the same day he checked out to himself the $80 remaining of the $960. In the spring of 1914 appellant sold and indorsed the note sued upon to the Planters' National Bank, and the bank was the owner of same at the time Coleman sold the cotton to Scott Bros. as stated. Afterward appellant repurchased

the note of the Planters' National Bank, and owned it at the time she commenced her suit.

[1] On the facts stated it is clear, we think, that appellant's contention should be overruled. In support of the contention appellant insists that, because the cotton was stored in a warehouse at the time Scott Bros. purchased it, a landlord's lien existed on it in her favor by virtue of art. 5477, Rev. St., as amended by the act October 9, 1914 (Gen. Laws, 2d Sp. Sess. 33d Leg., p. 33), and section 42 of the act September 26, 1914 (Same Laws, p. 32), notwithstanding more than one month had elapsed since the cotton was removed from the rented premises. Whether the insistence should be sustained or not will not be determined, but the applicability of the statutes referred to may, it is suggested, well be doubted, in view of a stipulation in the warehouseman's receipts that they were negotiable under his rules. As we view the case, if it should be conceded that such a lien existed on the cotton, while a cause of action, as for a conversion may have arisen against Scott Bros., the purchasers of the cotton, one did not arise in appellant's favor against the appellee bank. It did not buy the cotton, and, so far as we can determine from the record, was guilty of no actionable wrong to appellant.

The judgment is affirmed.

### On Motion for Rehearing.

[2] The contract whereby appellant leased land to Coleman was in writing. It contained a stipulation that the note sued upon was "to be paid out of the first cotton gathered and sold from said above-rented place." It appearing that the ten bales of cotton mentioned in the opinion as having been grown on appellant's land was all the cotton Coleman grew thereon, it is contended in the motion that the effect of the stipulation referred to, as between appellant and Coleman and persons having notice thereof, was to assign to appellant the proceeds of the sale of said ten bales of cotton. The contention should, we think, be overruled.

"An agreement to pay a debt out of, a certain fund will not operate as an equitable assignment of the whole or any part of such fund, such an agreement being a mere promise." 4 Cyc. p. 47; 2 A. & E. Enc. Law, p. 1068.

As appellant did not own the proceeds of the sale, nor an interest in same, it follows that the further contention made in the motion, that appellee bank became liable as for a conversion of said proceeds when it permitted Coleman to apply same as stated in the opinion, should be overruled, notwithstanding it appeared that, at the time it permitted Coleman to so apply same, it knew that ten bales of the cotton were grown by Coleman on said premises, and further knew that the note sued upon was then unpaid in the hands of the Planters' National Bank.

As appellant did not own the proceeds of the sale of the cotton, her right, if she had a right, to recover against appellee bank, as she sought to, must have been based on the fact that she had a lien on the cotton, and that said bank had, in legal contemplation, converted it. What the bank did, as shown by the testimony was to hold the warehouseman's receipts for "safe-keeping" on Coleman's account until he sold the cotton, and then, as directed by him, to deliver the receipts to Scott Bros., and collect from them, and credit his account with, the price they had agreed to pay Coleman for the cotton. In doing that, even if a lien existed on the cotton in appellant's favor, the bank violated no legal duty it owed to appellant. It had no right to refuse to deliver to Scott Bros., when directed to do so by Coleman, the tickets it held for him merely for "safe-keeping," and it had a lawful right when authorized by Coleman to do so to receive the purchase price of the cotton of Scott Bros. on his account. Had it after so receiving the money paid it into Coleman's hands instead of placing it to his credit on its books, it would not, we think, thereby have incurred liability to appellant. For the proceeds of the sale of the cotton belonged to Coleman, and appellee bank was bound on his demand therefor to deliver same to him. Had he demanded the money and had appellee bank paid it into his hands, it would have done appellant no legal wrong had it afterwards accepted it of Coleman in payment of the debt he owed it. If this is true, then certainly the fact that it did not pay same into Coleman's hands, but instead, in compliance with his direction, deposited it to the credit of his account and afterwards permitted him to apply it as stated in the opinion, did not render it liable to appellant as for a conversion.

We have examined the authorities noted in the motion, and do not understand any of them to be in conflict with the view we have taken of the case.

The motion is overruled.