## PATTERSON v. CITIZENS' NAT. BANK OF LUBBOCK. (No. 1877.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 21, 1921. Rehearing Denied Jan. 11, 1922.)

**1. Assignments ⬤⟳50(1)—Liens ⬤⟳7—Promise to pay out of particular fund not equitable assignment and did not give equitable lien.**

A mere promise to pay a debt out of a particular fund will not operate as an equitable assignment pro tanto of the fund, nor will it establish an equitable lien thereon.

**2. Assignments ⬤⟳48—Liens ⬤⟳7—No particular words necessary to constitute equitable assignment.**

No particular words are necessary to constitute an equitable assignment or an equitable lien; all that is required for the latter being an intention of the parties, clearly deducible from the contract, to pledge the fund as a security for the debt.

**3. Assignments ⬤⟳50(1)—Liens ⬤⟳7—Promise to pay note out of deposit not an equitable assignment and did not give bank lien.**

The mere promise by maker of note to payee bank to pay the same out of a deposit in the bank did not constitute an equitable assignment of the fund to the bank pro tanto, or give the bank a lien thereon.

**4. Bankruptcy ⬤⟳154—Bank had no right to apply deposit on note.**

A bank, not having a lien on a deposit of one adjudicated a bankrupt, had no right to apply the deposit, or part of it, in payment of a note given by the bankrupt to the bank prior to the adjudication.

Appeal from Lubbock County Court; P. F. Brown, Judge.

Suit by G. D. Patterson against the Citizens' National Bank of Lubbock. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

R. A. Sowder, of Lubbock, for appellant.
Bean & Klett, of Lubbock, for appellee.

BOYCE, J. This suit was brought by appellant, G. D. Patterson, against appellee bank to recover the sum of $303.10 deposited to plaintiff's credit in the bank and wrongfully, it is alleged, appropriated by the bank and applied to the payment of a certain note executed by Patterson and payable to the bank. The plaintiff alleged that prior to such act of the bank he was adjudged a bankrupt and subsequently received his discharge in bankruptcy; that said debt was thereby discharged, and the bank, in applying such deposit as a credit on such debt, acted wrongfully. The bank claimed, and this claim raises the real controversy in the case, that it had an equitable lien on or an assignment of the fund represented by this deposit, which lien or assignment was not dischargeable by the adjudication of bankruptcy.

On November 8, 1918, G. D. Patterson executed and delivered to the bank his note for $275.24. The following testimony of the bank's cashier is relied on by the bank to establish the equitable assignment or lien claimed by it:

"On November 8, 1918, I was an active officer in such bank, and I recall the bank having a note of $275.24 made by the plaintiff to it. This was given for money advanced to him. At this time he had a farm near Lubbock. Proceeds of his rent crop for the year 1919 was deposited in such bank, and sufficient was deposited to cover his note. Patterson made various promises as to how he would repay this money. He promised to sell the place and also had me to try to get him a loan through the Federal Land Bank, which I failed to do. He promised to pay it with any revenue that he could get off the farm through sale of crops or stock. Yes; he said he would repay the $275.-24 out of the produce of the farm."

Patterson filed his petition in bankruptcy on September 29, 1919, and on March 31, 1920, was discharged from all his debts, dischargeable in bankruptcy, "which existed on September 29, 1919." The note to the bank was listed among the liabilities in the bankruptcy proceeding, and the bank filed its claim therein, but later withdrew it. On October 17th and later during that month and November, 1919, Patterson's tenant on the 160 acres of land referred to, deposited rentals therefrom with the bank, to the credit of an account entitled "G. D. Patterson Rent Account." The deposits were made upon direction of Patterson. On November 12, 1919, the bank, without Patterson's knowledge or consent, charged said account with $303.10, and credited said note with such amount. This suit was brought by the said Patterson to recover said sum of money. The trial court held as a matter of law "that the agreement between said Patterson and said bank created an equitable lien, mortgage, and assignment of the proceeds so deposited in said bank as security for said debt, owing by said Patterson to said bank," and entered judgment for the defendant.

[1-4] It seems to be the well-settled law that a mere promise to pay a debt out of a particular fund will not operate as an equitable assignment pro tanta of the fund.

"An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such

a character that the fund holder can safely pay, and is compellable to do so though forbidden by the assignor." Christmas v. Russell, 14 Wall. 84, 20 L. Ed. 764; 5 C. J. 913–916, and notes.

The authorities are equally clear that such an agreement will not itself be sufficient to establish an equitable lien on the fund. There must be something further to evidence the intention of the parties to charge the fund itself with the payment of the debt. Davis v. State National Bank, 156 S. W. 321; Youngberg v. El Paso Brick Co., 155 S. W. 717 (3); Addison v. Enoch, 48 App. Div. 111, 62 N. Y. Supp. 613; Phillips v. Hogue, 63 Neb. 192, 88 N. W. 180; Jones on Liens, §§ 48 and 52. The authorities on this subject are so elaborately reviewed in the citations, particularly in the case of Davis v. State National Bank, supra, and in the notes to the text in 5 C. J. 913 et seq., that we may refer to them in lieu of a more detailed consideration thereof in this opinion. There is a clear distinction between the facts of this case and those in the case of Atlanta National Bank v. Four States Grocer Co., 135 S. W. 1135, and Davis v. State National Bank, 156 S. W. 321. In the case first cited there was an agreement between the debtor and his creditors, under the terms of which the debtor was restricted as to the management of his property and the control and disposition of certain funds to be derived from such management, and the evidence no doubt warranted the conclusion that the agreement was to the effect that the indebtedness "should become and be a charge on that fund." In the second case cited the facts were, in the opinion of the court, sufficient to show:

That "under the agreement there was an appropriation pro tanto of the fund in controversy to the amount of the fee contracted to be paid to Davis & Goggan [the creditor], and to that extent Casey [the debtor] had surrendered control of the fund; that it was understood and agreed that they acquired an interest therein which should be paid by the bank [the holder of the fund] or the receiver to Davis & Goggan, and it was not a mere personal promise on the part of Casey that he would pay the fee out of those moneys."

It is true:

That no particular words are necessary to constitute an equitable assignment or an equitable lien, and that all that is required "to create such an equity was that 'the intention of the parties, as deducible from the contract, be clear in its purpose to pledge the fund as a security for the debt created.' Powell v. Jones, 72 Ala. 398." Atlanta National Bank v. Four States Grocer Co., supra.

But, as already stated, the authorities also agree that a mere promise to pay out of the fund does not sufficiently indicate such an intention. That is practically all that the agreement between the bank and Patterson, as it existed on September 29, 1919, amounted to. If no lien existed at the date of the adjudication, then the debt cannot be made the basis for the creation of a lien by the creditor thereafter, without the debtor's consent.

"The Bankruptcy Act does not continue a dischargeable debt for the purpose of permitting a lien to be created after the adjudication, but only to preserve and enforce a lien in existence at the date of the adjudication. As against dischargeable debts, the bankrupt is to be protected in the enjoyment of property acquired after the adjudication unless it is affected with a lien at the time of the adjudication." Brandenburg on Bankruptcy, § 1522.

The trial court erred, we think, in his conclusion of law, and the judgment will be reversed, and here rendered for the appellant.