The plaintiffs, C. C. Morgan, Emory M. Morgan, and R. J. Morgan, composing the copartnership of the Morgan Lumber Company, instituted this suit in the district court of Wichita county, Tex., against the defendants T. E. Warne and the Empire Mortgage Company, a corporation, to recover $692.95.
Plaintiffs allege that during the months of August, September, and October, 1925, at his special instance and request, they sold and delivered lumber and building material to T. E. Warne upon the price of which he still owes them a balance of $692.95; that the material was furnished for and used in the erection of a house on lot 1, block 13, of the Sibley-Taylor addition to the city of Wichita Falls, Tex., and on November 27, 1925, they filed in the office of the county clerk of Wichita county, in accordance with law, an affidavit fixing a lien on said premises to secure the payment of their debt; that T. E. Warne secured a loan from the Empire Mortgage Company in the sum of $3,400, with which to erect the house on the above-described land, and it was agreed between the defendants that said mortgage company would retain the proceeds of the loan in its possession and all accounts for labor and material used in the house would be paid by the mortgage company to the parties furnishing such labor and material upon the order of T. E. Warne, including the account of plaintiffs; that at the time of the purchase of the material from plaintiffs, T. E. Warne assigned to them a sufficient sum of money out of said fund held by said mortgage company to pay plaintiffs for the material they furnished, of which assignment the mortgage company at all times had full notice, and thereby became bound to pay plaintiffs said sum, which it has wholly failed and refused to do.
Plaintiffs say that if they be mistaken as to the assignment, then they plead in the alternative that they were unwilling to sell the material to T. E. Warne on his credit alone, and were advised by him that the Empire Mortgage Company held the funds for the purpose of paying for the material, and upon inquiry they were advised by the mortgage company that it held a sufficient sum of money in said fund to pay the plaintiffs for the material they furnished, and relying on said representations they furnished the material, which they would not have done but for such representations; that the Empire Mortgage Company did pay plaintiffs $1,200 on its account, and it is estopped to plead insufficiency of funds because plaintiffs have changed their position and have been injured to the extent of $692.95 thereby. Plaintiffs say that if they are mistaken as to their right to recover on the assignment, and also mistaken as to the estoppel, then they plead that about October 17, 1925, T. E. Warne gave an order to the Empire Mortgage Company instructing it to pay these plaintiffs the balance due on its account out of funds held by it as the proceeds of said loan, and at that time the mortgage company had sufficient funds to have paid the plaintiffs said balance.
The defendants answered by general denial.
T. E. Warne specially denied that he had an agreement with his codefendant that it should pay out the money on his orders, that he assigned any of such money or funds to the plaintiff, or that he owed them any money; denies that he purchased material from the plaintiffs or made any agreement with them to pay for such material. He alleges that if he had agreed to pay it would have *Page 558 
been a promise to pay the debt of another and unenforceable under the statute of frauds. He pleads that he made a contract with W. M. Mauldin, a contractor, to erect the house, and he and his wife executed to him a note in the sum of $2,000, which they secured by executing a mechanic's and materialman's lien against the premises, which note and lien were duly transferred by W. M. Mauldin to his codefendant, the Empire Mortgage Company; that the property was and is his homestead, and the lien attempted to be fixed thereon by plaintiffs is null and void; that he received no notice as required by law of the items of the material furnished, and was without knowledge that the contractor had failed to pay all bills until after he had paid the contractor according to the contract; that the material, if furnished by plaintiff, was furnished to W. M. Mauldin, as an independent contractor, who was to erect, complete, and deliver said house to said defendant.
The Empire Mortgage Company specially denied any agreement to retain the money and pay it out on the orders of T. E. Warne; any knowledge of any assignment of money or funds by T. E. Warne to the plaintiff; denied that it stated to the plaintiffs that it held sufficient funds to pay their claim, It alleges that it purchased from W. M. Mauldin the contractor, a materialman's and mechanic's lien and note for the sum of $2,000, given to the contractor by T. E. Warne and his wife, and loaned T. E. Warne an additional sum of $1,400 to be paid to the contractor, and that said moneys were paid out under the direction of the contractor; that its codefendant had no money with it out of which he could have made an assignment; that it loaned its codefendant the $1,400, recited in the contract as the cash payment from Warne to the contractor, and $61, covering extras on the building, making a total sum of $3,461, which it held for the contractor to be paid to him under the contract.
The case was tried without the intervention of a jury, and at the conclusion of the evidence the court rendered judgment that plaintiffs take nothing against T. E. Warne and that he go hence without day with his costs. In his judgment the court finds that there was $313.47 held by the Empire Mortgage Company after the completion of the building which had been assigned to appellees, and that they were entitled thereto, and decreed that they have and recover from the Empire Mortgage Company said sum, with interest at the rate of 6 per cent. per annum from January 1, 1926, and costs.
The appellant assigns as error the action of the trial court in rendering judgment against It because the evidence was insufficient to support such judgment, and did not show an assignment or equitable lien given by T. E. Warne against the fund to the appellees.
So far as necessary to a disposition of this appeal, the findings of fact filed by the court are in effect that T. E. Warne was the owner of the lot and made arrangements with appellant to advance the necessary funds to erect a building thereon for a home; that in this arrangement T. E. Warne was to execute a mechanic's lien to W. M. Mauldin against the property to secure a note of $2,000 and give other and additional security for the sum of $1,400, and that such mechanic's lien would be transferred to the appellant, all of which was done, and that the funds would be held by the mortgage company and paid to laborers and materialmen on the order of T. E. Warne; that thereafter the appellees agreed with T. E. Warne and W. M. Mauldin, the contractor, to furnish the material for the house; that T. E. Warne assigned to appellees a sufficient sum out of said fund so held by the mortgage company to pay them for their material; that appellees notified the appellant of the assignment after it had paid out for material and labor on the orders of T. E. Warne all of the funds except $313.47; that after the notice given appellant of the assignment, all of the $313.47 except $81.45 was paid out by appellants upon suits against W. M. Mauldin in which appellant had been garnished and judgments obtained against it as garnishee.
The court concludes that the funds deposited with appellant belonged to T. E. Warne and were subject to his control; that there was an equitable assignment from Warne to appellees, and on receipt of notice of said assignment, appellant became liable to appellees for the sum of $313.47, the amount still in its hands; that appellees made and filed an affidavit as the law prescribes for fixing a lien on the property, which was void because the premises constituted the homestead of T. E. Warne and family. The court makes no findings upon the alternative pleas alleged by appellees, and the testimony is not sufficient to support either of such pleas.
Mr. Emory Morgan, one of the appellees, testified, in substance, that T. E. Warne consulted with him relative to building the house, and asked that he recommend a loan company, which he did; that later Warne told the witness that he had decided that he could get a better deal by securing the loan from Mr. Hunter, general manager of appellant; that the witness told Warne it was immaterial to appellees how he paid or made the loan; that they were only interested in knowing that there was a valid lien created against the property, as they would look to him and the property for their money; "I told him that it was immaterial to us; that naturally we would look to him and the property for our money; and we expected this mechanic's lien to be our security; and it was immaterial to us what company it was;" that the material was sold to Mr. Warne with the understanding that they were *Page 559 
looking to him for the money, the material being charged on the books to Mr. Mauldin, the contractor, and Mr. Warne, the owner of the property; that he did not know that the property was a homestead because he understood that Warne had other property.
Chester Morgan, one of the appellees, testified in substance:
That he sold the lumber to T. E. Warne; that in the negotiations for the sale Warne told him that he was getting the money from appellant and that no money would be paid out except on the order of Warne. "He" (Warne) "told me where the money was coming from. He told me he was borrowing the money from the Empire Mortgage Company. * * * He had borrowed it at that time. He said it will be paid out of that money. I think I was asking him more particularly myself; in fact, I just asked him if he would see that we were paid out of the money, and it would not be paid out some other way, and he said that he would, would see that we got our money for the lumber. * * * Warne never did give the Morgan Lumber Company an order for this money. We did not have any assignment wherein they gave to us that money anything more than his promises. Mr. Warne told us that he would see that the bill was paid from the proceeds of the loan. He never did give us any order on Mr. Hunter personally or written, or any order."
Mr. Mauldin, the contractor, testified:
"Chester Morgan asked Mr. Warne where the money to pay for the lumber was to come from, how it would be paid, or something like that, and Mr. Warne told him where he got the money."
Mr. Warne testified that he did not tell appellees that he would pay them out of the fund.
"An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund — any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fundholder can safely pay, and is compellable to do so, though forbidden by the assignor." Christmas v. Gaines et al., 14 Wall. 84, 20 L.Ed. 764; Patterson v. Citizens' National Bank (Tex.Civ.App.) 236 S.W. 130.
The court's finding that the money would be paid out on the order of T. E. Warne is warranted by the evidence, and the testimony is uncontroverted that no order, either written or oral, was given to the appellees for the payment of their debt out of the fund held by appellant, and that they had no assignment except the promise of T. E. Warne that he would see that the debt was paid out of such fund; hence, Mr. Warne retained control over the fund, the authority to control it, and the power of revocation, and this "is fatal to the claim of the" appellees.
The testimony of the two Messrs. Morgan is to the effect that at the time the contract for the material was made, they advised T. E. Warne that they would look to him and the property for their money. They charged the material to Mauldin and Warne, and undertook later to fix a lien upon the property of T. E. Warne by filing an affidavit, as provided by law, with the county clerk. Mr. Warne testifies in effect that he had no intention of making an assignment to the appellees of any of the fund. In our opinion, this testimony shows that the intent, which is indispensable to an assignment, did not exist.
"An agreement to pay a debt out of a certain fund will not operate as an equitable assignment of the whole or any part of such fund, such an agreement being a mere promise and not sufficient to transfer control over the fund." 5 C.J. p. 913, par. 80.
The testimony relied upon by appellees, which we have stated above, is insufficient to show more than a mere promise to pay out of the fund, and insufficient to transfer control of the fund. Donaldson v. Lynch (Tex. Civ. App,) 247 S.W. 565; Patterson v. Citizens' National Bank, supra; Colleps v. Geo. W. Smith Lumber Co. (Tex.Civ.App.) 185 S.W. 1043; Provine v. First National Bank (Tex. Civ. App,) 180 S.W. 1107; Davis Goggin v. State National Bank (Tex.Civ.App.) 156 S.W. 321.
The testimony interpreted by the principles announced in the foregoing authorities is not sufficient to establish the indispensable elements of an assignment from T. E. Warne to appellees.
The judgment is reversed and the cause remanded. *Page 560