### KOENIG v. RIO BRAVO OIL CO. et al.
### (No. 1327—5434.)

Commission of Appeals of Texas, Section A. Feb. 12, 1930.

C. F. Richards, of Lockhart, and Terrell, Davis, McMillan & Hall and E. W. Clemens, all of San Antonio, for plaintiff in error.

Tom Gambrell and Fred L. Blundell, both of Lockhart, and Hart, Patterson & Hart, of Austin, for defendants in error.

SHARP, J. Max W. Koenig brought suit in the district court of Caldwell county against the Rio Bravo Oil Company, C. F. Hickman, and M. J. Kissick, for the recovery of $1,500, being the proceeds of oil produced from the 30-acre Tiller lease owned by Koenig. M. J. Kissick answered and filed a cross-action against Koenig, Hickman, and the Rio Bravo Oil Company for the sum of $1,-500 in the possession of the Rio Bravo Oil Company, or in the hands of the district clerk of Caldwell county, and further prays for a judgment against Hickman for $1,500, with interest thereon, and for a foreclosure of his lien against all the property sold by Kissick to Hickman and for foreclosure of his lien on one-eighth of the oil sold or delivered to Rio Bravo Oil Company to the extent of $1,500 or the money derived therefrom, for an order of sale, costs, general and special relief. C. F. Hickman filed no answer, and the Rio Bravo Oil Company filed an answer admitting that it owed some one $1,500, and deposited that amount with the clerk of the district court of Caldwell county and asked to be relieved of all costs and further liability. The trial court rendered judgment that Koenig recover nothing by reason of his suit and rendered judgment for Kissick for $1,500, to be paid out of the money deposited by the Rio Bravo Oil Company, with the clerk of the district court of Caldwell county. Upon appeal the Court of Civil Appeals for the Third Supreme Judicial District affirmed the judgment. 15 S.W. (2d) 93. Koenig applied to the Supreme Court for a writ of error, which was granted.

The following are substantially the facts proved:

In July, 1924, H. T. Finnell and Bassett R. Miles owned the 30-acre Tiller lease in the Luling oil field, but the United North & South Oil Company, Inc., had at that time filed suit against W. J. Tiller, the owner of the fee, and those interested in the lease, claiming that it was the owner of this 30-acre lease, and prayed for a specific performance of an alleged contract executed by Tiller, and this suit was not finally decided until February, 1927.

On July 22, 1924, while the title to the lease remained undetermined because of litigation, Miles and Finnell entered into a contract with C. F. Hickman to drill a well for oil upon the 30-acre Tiller lease. It was agreed in the contract that Hickman should receive $12,000 for drilling the well, $4,000 in cash and $8,000 "payable in oil only from one-fourth of the production as the oil is produced and saved from the Tiller Well Num-

ber One, provided, however, that the said C. F. Hickman has carried out all the terms and conditions of this agreement as herein related and all further conditions until the completion of said Tiller Well Number One." Hickman intervened in this suit. On March 30, 1925, the foregoing suit was tried in the district court of Caldwell county, and judgment was rendered in favor of Finnell and Miles, and there being no dispute as to the amount owing to Hickman, the court found that he was entitled to a judgment for $6,800 with interest from November 1, 1924, and merged into the judgment the balance which was agreed to be paid to him under the drilling contract and fixed and established his statutory lien for the confessed indebtedness against the whole of the leasehold interest of the said Finnell and Miles in the 30-acre tract of land, including the lease for oil and gas purposes, the buildings and appurtenances thereto, and upon said Tiller well No. 1 and upon all other wells drilled or to be drilled on said leasehold, and also fixed the statutory lien of C. F. Hickman on all of the described real and personal property and upon one-fourth of all the oil heretofore produced and to be produced therefrom, and that same be foreclosed, and an order of sale was authorized to be issued thereunder.

In December, 1925, Carter Towns, and Richards acquired Miles' interest in the Tiller 30-acre lease, and Koenig thereafter acquired their one-half interest, having previously purchased the other one-half from Finnell. The judgment in favor of Hickman was paid in full by Koenig, Towns, Carter, and Richards on February 15, 1927, as soon as the litigation with the United North & South Oil Company, Inc., was terminated, and Hickman executed a full release of the judgment lien. On August 12, 1924, C. F. Hickman purchased from M. J. Kissick 2,200 feet of drill stem, and as the questions presented involve the legal effect of this contract, it is quoted in full:

"This memorandum witnesseth that M. J. Kissick, hereinafter called Seller, in consideration of One Dollar to him in hand paid, and of the further sum hereinafter agreed to be paid by C. F. Hickman, hereinafter called Buyer, hereby bargains, sells and delivers to buyer the following described personal property, towit:

"2200 feet of Four (4) inch National Upset Drill Stem with Hickman Tool Joints.

"In consideration for which the Buyer promises to pay to seller the sum of Fifteen Hundred and no/100 ($1500.00) Dollars, said sum to be paid out of one-eighth (⅛) of the first oil run from the W. J. Tiller 30-acre lease, said thirty acre lease being located in the northeast corner of the W. J. Tiller 300-acre tract of land adjoining the Proctor lease on the south and east and the Merriweather lease on the north and east, and being a part of the John Henry league in Caldwell County, Texas.

"Should there be no oil discovered on said 30-acre lease, then and in that event, the Buyer promises and obligates himself to return said drill stem to said Seller in as good condition as when received less ordinary wear and tear.

"It is expressly provided that the title to the above described property is retained by and in seller until the full payment of the above obligation by Buyer; and if buyer shall fail to pay such obligation in full when due, then seller shall have the right, and is hereby authorized and empowered, to take and resume possession of, and remove into such possession, any and all of the above described property, wherever found; said Buyer hereby waiving any claim or action for trespass or damage on account of said taking. In case seller resumes such possession, Buyer shall be no further liable on the above obligation and Seller may keep or dispose of such property as such seller may choose, or, instead of resuming possession of such property in satisfaction of Buyer's obligation as above described, seller in case of default shall have the option (no expression thereof being required) to treat this instrument as a chattel mortgage, and either with or without suit, court proceedings, or process, shall have a right individually or through agency to take possession of any or all of the above described property wherever it may be found, without any liability for damages or other claim whatever, and remove and sell the same either at public or private sale at such time and place as seller shall choose, applying the proceeds of such sale as a credit upon such obligation, without prejudice to further enforcement of any balance of such obligation remaining due, and in case such proceeds exceed the amount due upon such obligation, returning the balance to Buyer."

The facts are undisputed that at the time Hickman bought from Kissick the 2,200 feet of drill stem and executed the contract above copied, no oil well had been drilled and no oil produced; that the wells from which the oil was produced were brought in on October 28, 1924, and on April 1, 1925.

The Court of Civil Appeals in rendering its opinion held as follows: "As we construe the contract between Kissick and Hickman, it amounted in effect to a conditional sale of the drill stem in consideration of an assignment of Hickman's interest in $1,500 worth of one-eighth of the first oil produced from Tiller well No. 1. The effect of this assignment was to transfer to Kissick the rights or interests of Hickman in the oil pro tanto."

The correctness of the foregoing conclusion of the Honorable Court of Civil Ap-

peals in its opinion rests upon the meaning and intention expressed in the contract made by Hickman and Kissick. In our opinion, the contract shows that it was the purpose of Kissick to sell to Hickman, for a consideration of $1,500, 2,200 feet of drill stem and the consideration "to be paid out of one-eighth of the first oil run from the W. J. Tiller 30 acre lease." Should no oil be discovered on the lease, Hickman was to return the drill stem to Kissick. In case Hickman failed to pay the obligation when due, Kissick reserved the right to take and resume possession of the property described in the contract, and if Kissick resumes such possession, Hickman shall not be further liable on the obligation, and Kissick will have the right to occupy or dispose of such property as he may choose, and in the event Kissick should not resume possession of the property described in the contract the instrument shall be considered a chattel mortgage.

Taking into consideration the language used in the foregoing contract and the intentions and purposes expressed therein, we are of the opinion that a chattel mortgage was retained only on the 2,200 feet of drill stem sold Hickman by Kissick, and that it was not intended by such instrument to convey by bill of sale or otherwise any interest in the oil described therein or give a lien thereon.

We do not understand from the opinion of the Court of Civil Appeals that it was intended to be held that Kissick, by reason of the contract aforesaid, had a chattel mortgage lien against the oil described therein and rested its conclusions upon the ground that the contract amounted in effect to a conditional sale of the drill stem in consideration of an assignment of Hickman's interest in $1,500 worth of the one-eighth of the first oil produced from the Tiller lease, and that the effect of this assignment was to transfer to Kissick the interest of Hickman in the oil pro tanto.

It seems to be well settled by recognized principles of law and the authorities that a mere promise to pay a debt out of a particular fund will not operate as an equitable assignment pro tanto of the fund.

In 37 Corpus Juris, p. 317, the following rules are laid down:

"An intention to create a charge or lien on the property must clearly appear from the language of the instrument itself and the attendant circumstances, strict proof of such intention being required.

"It is also essential that the contract make a distinct appropriation of the fund or property pro tanto, either by giving an order thereon or by otherwise transferring it in such a manner as in effect to constitute an equitable assignment, and authorize the hold-er of the fund or property to pay the amount directly to the creditor."

The rule is further stated as follows:

"An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fund holder can safely pay, and is compellable to do so though forbidden by the assignor. Christmas v. Russell, 14 Wall. 84, 20 L. Ed. 764; 5 C. J. 913–916, and notes."

In the case of Burke v. Child, 88 U. S. (21 Wall.) 441, 447, 22 L. Ed. 623, the Supreme Court of the United States says:

"It is well settled that an order to pay a debt out of a particular fund belonging to the debtor gives to the creditor a specific equitable lien upon the fund, and binds it in the hands of the drawee. Yeates v. Groves, 1 Ves., Jr. 280; Lett v. Morris, 4 Simons, 607; Bradley v. Root, 5 Paige [N. Y.] 632; 2 Story's Equity, § 1047. A part of the particular fund may be assigned by an order, and the payee may enforce payment of the amount against the drawee. Field v. The Mayor, 6 N. Y. 179 [57 Am. Dec. 435]. But a mere agreement to pay out of such fund is not sufficient. Something more is necessary. There must be an appropriation of the fund pro tanto, either by giving an order or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor. Wright v. Ellison, 1 Wall. (68 U. S.) 16 [17 L. Ed. 555]; Hoyt v. Story, 3 Barb. [N. Y.] 264; Malcolm v. Scott, 3 Hare, 39; Rogers v. Hosack, 18 Wend. [N. Y.] 319.

"Viewing the subject in the light of these authorities, we are brought to the conclusion that the appellee had no lien upon the fund here in question."

In the case of Davis & Goggin v. State Nat. Bank (Tex. Civ. App.) 156 S. W. 321, 327 (Writ of Er. Ref.), the court says:

"On the other hand, a mere agreement, whether by parol or in writing, to pay a debt out of a designated fund of itself is not sufficient; there must be an appropriation of the fund pro tanto either by an order on the specific fund or by transferring the amount otherwise in such a manner that the holder of the fund is authorized to pay the amount directly to the creditor, without the further intervention of the debtor. In other words, an equitable assignment can be effected only

by a surrender or control over the funds or property assigned. For instance, the mere promise of a debtor that he will pay a debt out of particular funds is not sufficient; there is lacking the specific appropriation of the fund pro tanto and surrender of control thereof. In like manner a bill of exchange does not of itself constitute an equitable assignment of the sum for which it is drawn, unless it specifies the particular fund upon which the order or bill is drawn, and the drawer has divested himself of all right to control the fund. The same rule applies to ordinary checks. 1 Jones on Liens, §§ 51, 52, 55, 57; House v. Kountze, 17 Tex. Civ. App. 402, 43 S. W. 561; McBride v. American, etc., [60 Tex. Civ. App. 226], 127 S. W. 229."

In the contract dated July 22, 1924, between Miles, Finnell, and Hickman, it is recited that the consideration for the work to be done was to be paid in "money and oil" and that Hickman was to receive an additional sum of $8,000 "payable in oil only from one-fourth of the production as the oil is produced and saved from the well."

In the judgment dated March 31, 1925, in the suit between the United North & South Oil Company v. Miles, Finnell, et al., in the district court of Caldwell county, is the following provision: That Miles and Finnell "confessed to the justness of the cause of action asserted by the intervener C. F. Hickman," and that he "was entitled to one-fourth of the oil produced from Tiller Well No. 1 drilled on 30-acre tract of land hereinafter described until he has been paid the sum of $6800, being the amount which the defendant Miles and Finnell and the intervener Hickman agreed to be the balance owing under the claim set out in the latter's intervention." The judgment further provides: "It is further ordered * * * that * * * Hickman do have and recover of the defendants H. T. Finnell and Bassett R. Miles the sum of sixty-eight hundred dollars with interest thereon from November 1, 1924, at the rate of 6% per annum until paid, and that the statutory lien of the intervener C. F. Hickman on all the above described real and personal property and upon one-fourth of all the oil heretofore produced and to be produced therefrom, be and the same is hereby foreclosed."

That in the conveyance from Miles to Richards, Towns, and Carter, dated December 18, 1925, reference to the judgment rendered in the suit of United North & South Oil Company v. Tiller et al., noted above, recites that "in said judgment certain rights and interest of C. F. Hickman as to a part of the oil to be produced from said lease were fixed and determined," and further recites that the assignment of the lease to Richards, Towns, and Carter "is subject to said suit (an appeal being then pending from the judgment of the district court) and the said grantees herein accept the same subject to the indebtedness that the interest of the grantor herein may be subject to or liable for."

That in the conveyance from Towns, Richards, and Carter to Koenig, wherein they convey to Koenig their one-half interest in the lease, it is recited that as a part of the consideration for the conveyance that "Koenig assumes and agrees to pay all indebtedness of every nature and character, including taxes to which the interest in said lease is subject," and that it was the purpose of the transferor to convey "all oil heretofore produced from said land belonging to the interest hereby conveyed."

It is urged that the provisions contained in the foregoing judgment of the court and the various instruments described should be construed in connection with the provisions of the contract made by and between Hickman and Kissick, which is fully copied above. Kissick was not a party to the suit nor to any of the instruments above described, except the contract made by him with Hickman. A reading of the record in the suit discloses that the claim of Kissick against Hickman was not considered in the lawsuit nor in the judgment entered therein; that it was an adjudication of the matters and issues between the parties in that suit. It is also plain that the other instruments quoted from above had no reference whatever to the claim held by Kissick against Hickman, and in the judgment and the instruments quoted from above it was not the intention nor the purpose of the parties interested therein to include, in any way whatsoever, the Kissick claim against Hickman. The Kissick claim must stand or fall by the terms of his contract with Hickman, and the provisions in the judgment and other instruments cited above cannot be construed to the effect that they will aid or lend any assistance in any way to the establishment of a lien or conveyance or an assignment of the oil or the proceeds derived therefrom described in the contract.

As we view this entire record, we are of the opinion that the contract in controversy did not convey any oil, nor is it a mortgage on any oil, but retained only a mortgage on the drill stem, and it is immaterial, so far as the rights of Koenig are concerned, where the contract was filed or recorded.

In view of the fact that the testimony produced in this case consists principally of records which are undisputed, and that the facts have been fully developed, we recommend the following:

(a) That the judgment of the Court of Civil Appeals and the trial court be reversed, and that judgment be rendered herein as follows:

(b) That Max W. Koenig do have a judgment against the Rio Bravo Oil Company for the sum of $1,500, to be paid out of the funds

deposited with the district clerk of Caldwell county, Tex., by the Rio Bravo Oil Company, and that all claims or rights of C. F. Hickman and M. J. Kissick in the said $1,500, so deposited by the Rio Bravo Oil Company with the district clerk of Caldwell county, be canceled and annulled.

(c) That M. J. Kissick have judgment against C. F. Hickman for the sum of $1,500 with interest thereon from August 12, 1924, at the rate of 6 per cent. per annum, together with a foreclosure of his chattel mortgage lien on the 2,200 feet of 4-inch National up-set drill stem with Hickman tool joints, and that he have his order of sale and costs incurred in the trial court.

(d) That the Rio Bravo Oil Company, having deposited the funds involved in this suit with the district clerk of Caldwell county, Tex., be relieved of any further liability by reason of this suit.

(e) That all costs of this appeal be taxed against M. J. Kissick.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are reversed, and judgment is here rendered as recommended by the Commission of Appeals.