Gene WHITE et al., Appellants,

v.

Dan W. COOPER et al., Appellees.

No. 7713.

Court of Civil Appeals of Texas.

Amarillo.

May 1, 1967.

Rehearing Denied May 29, 1967.

Herbert C. Martin, Amarillo, for appellants.

Johnson & Dionne, Fort Stockton, Dick M. Allison, Fort Stockton, of counsel, for appellees.

DENTON, Chief Justice.

This suit was instituted by appellants, Gene White, Newton Ellison and Connie Peyton against appellees Dan W. Cooper, Edna Mae Cooper, C. A. Hudson, Ruth R. Hudson and C & H Farms, to recover the sum of $60,000.00 and attorneys' fees alleged to be owed to appellants by appellees by virtue of a written agreement and an alleged assignment executed by appellees.

Appellants filed a motion for summary judgment and appellees filed a controverting affidavit and a counter motion for summary judgment, which was answered by an

affidavit in opposition to such counter motion. The trial court granted appellee's motion, denied appellants' motion, and rendered judgment that appellants take nothing against appellees by their suit. Appellants have timely perfected this appeal.

· Appellees were the owners of a 15,550 acre ranch in Pecos and Ward Counties, Texas. They contracted to sell and subsequently sold this ranch to the Anchor Company for approximately $1,800,000.00. Appellees wrote appellant Gene White what was designated a "commission letter" which read in part as follows:

"Dear Mr. White:

"The undersigned recognize that your agency has been the procuring cause of the sale of the captioned properties as per the contract of purchase and sale entered into by and between the parties described in said caption and dated March 23, 1966, to which reference is here made for all purposes.

"This commission letter is to evidence our mutual agreement that you are to receive the sum of $60,000.00 as commission for services rendered by you or through your agency as real estate brokers. This letter also authorizes the Amarillo National Bank of Amarillo, Texas, which bank has been designated escrow agent in this transaction to distribute same sum to you at the time of closing according to written notification to be given to said bank by you."

White accepted the letter on the date written. On May 18, 1966, which was prior to the date of the closing, appellees' attorney mailed a letter to the Amarillo National Bank, the holder of the escrow fund, instructing the bank not to pay White any money until certain conditions had been met. The money was not paid and this suit was subsequently filed.

■ Appellants first contend they are entitled to recover as a matter of law on the ground appellees' commission letter consti-

tuted an assignment of the $60,000.00 to appellant Gene White. It is well settled that a mere promise to pay a debt out of a particular fund does not alone constitute an assignment of the fund. Colleps v. George W. Smith Lumber Co. (Tex.Civ. App.) 185 S.W. 1043; (Dismissed). In Davis & Goggin v. State National Bank of El Paso (Tex.Civ.App.) 156 S.W. 321 (Writ Ref.), we find the following language:

"On the other hand, a mere agreement whether by parol or in writing, to pay a debt out of a designated fund of itself is not sufficient; there must be an appropriation of the fund pro tanto either by an order on the specific fund or by transferring the amount otherwise in such a manner that the holder of the fund is authorized to pay the amount directly to the creditor, without the further intervention of the debtor. In other words, an equitable assignment can be effected only by a surrender or control over the funds or property assigned. For instance, the mere promise of a debtor that he will pay a debt out of particular funds is not sufficient; there is lacking the specific appropriation of the fund pro tanto and surrender of control thereof."

Cooper v. Cocke (Tex.Civ.App.) 145 S.W. 2d 275. Carr & Howard Construction Company v. Panhandle State Bank (Tex.Civ. App.) 347 S.W.2d 793 (Ref. N.R.E.) 6 Tex.Jur.2d, Assignments, Section 35, page 426.

■ By the terms of the commission letter, appellees promised to pay White the $60,000.00 commission "at the time of closing" the sale. Payment was conditioned upon the closing. At the time the letter was written and accepted the sale had not been completed. Although it could be argued there remained nothing further for the obligor (White) to do, it is clear the appellees did not relinquish control of the fund by the execution of the letter. A present interest in the money was not vested in White. We therefore conclude the

instrument did not constitute an actual or equitable assignment of the $60,000.00 of the escrow fund.

Both parties filed motions for summary judgment in which they contend their respective positions are supported by the Real Estate Dealer's License Act, Article 6573a Vernon's Ann.Civ.St. The pleadings, affidavits, and exhibits clearly establish the completed real estate sale; that appellant White's real estate agency was the procuring cause of the sale; that appellants White and Ellison were licensed real estate salesmen under the laws of New Mexico; that they were not licensed in Texas; and that Connie Peyton was a licensed real estate broker under the laws of Texas. Two primary questions are in dispute. Did White and his New Mexico agency associate themselves with Connie Peyton in the transaction here, and if so, was the transaction conducted by Connie Peyton, the resident licensed broker?

Appellees contend there is no summary judgment evidence Connie Peyton was either associated with the other appellants in this transaction or that she conducted the transaction. However, they argue in the event there was evidence to support these issues the appellants are precluded as a matter of law from recovering the real estate commission under Sections 19 and 28 of the Real Estate Dealer's License Act. They contend the requirement of Section 19, that no person or company may maintain an action for a real estate commission unless it is alleged and proved such broker was a duly licensed broker by this state, was undeniably not met by appellants White and Ellison. They further contend Connie Peyton, a Texas licensee, cannot recover the commission because she had no written agreement or listing with the sellers as required by Section 28 of the Act.

■ The material portion of Section 7(b) of the Act reads as follows:

"(b) A nonresident of this State may be licensed as a Real Estate Broker or Salesman providing such nonresident is at the time licensed as a broker in real estate under the laws of the State where he or it resides, and which said State has legal standards of qualification which the Commission finds equivalent to this Act; provided, however, that such nonresident must procure from the agency administering such law in such State, a certificate as to such license and recognizing and approving the reliability and standing of such nonresident in such other State, and file same with the Commission; and provided further, that said nonresident licensee shall at all times maintain a place of business in this State in conformity with the requirements as to resident licensees. Nothing herein is intended to prohibit real estate transactions in this State by nonresidents if conducted by a resident licensed broker or salesman."

Appellees argue the last line of this subsection, standing alone, does not entitle appellants to recover in the absence of compliance with Sections 19 and 28. We are not in agreement with this contention. One of the cardinal rules of statutory construction is to ascertain the legislature's intent and to give effect to every express determination thereof. Wood v. State ex rel. Lee, 133 Tex. 110, 126 S.W.2d 4. Magnolia Petroleum Company v. Walker, 125 Tex. 430, 83 S.W.2d 929. Shanken v. Wolfman (Tex.Civ.App.) 370 S.W.2d 197 (Ref. N.R.E.). It is equally well settled that a statute must be reasonably constructed consistent with the general principles of law. Magnolia Petroleum Company v. Walker (Supra).

■ Section 7(b) sets out the requirements and procedure for nonresidents to be licensed real estate brokers or salesmen in this state. The last quoted sentence reads:

"Nothing herein is intended to prohibit real estate transactions in this State by nonresidents if conducted by a resident licensed broker or salesman."

If this sentence has any meaning, and we believe that it does, it simply permits a non-resident real estate broker or salesman to engage in real estate transactions in this state if that nonresident's licensee associates himself with a Texas licensee; provided the Texas licensee conducts the transaction. To hold this section requires the non-residents to obtain a Texas license and/or the Texas licensee to be named in the written listing would give the statute a strained and meaningless construction. If the non-resident is permitted to engage in real estate transactions in this State, under certain conditions, he is entitled to enforce his legal remedies growing out of such transactions. The question then presented is whether or not under this record, either appellants or appellees are entitled to judgment as a matter of law. This question must be determined from a review of the parties' motions for summary judgment and the record thereunder.

■ The fact both parties filed motions for summary judgment does not mean the court is at liberty to grant one or the other and that in such event only questions of law are presented. Arlington Independent School District v. James T. Taylor & Son, Inc. (Tex.Civ.App.) 322 S.W.2d 548. Affirmed 160 Tex. 617; 335 S.W.2d 371. Levenson v. Alpert (Tex.Civ.App.), 399 S.W.2d 955. It is fundamental that a summary judgment is not proper if the evidence raises issues of fact to be determined by the court or jury. Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93. After applying these well settled principles of law to the record in this case we have concluded that material issues of fact exist as to whether or not appellants White and Ellison associated themselves with Connie Peyton; and whether or not the latter did in fact conduct the real estate transaction.

■ Appellee Dan W. Cooper, in an affidavit in support of their motion for summary judgment, declared he had never heard of Connie Peyton until citations in this case were served upon him long after the sale had been closed; and that neither White nor Ellison had told him that they had associated themselves with Connie Peyton in the transaction; and that he did not learn White and Ellison did not have a Texas real estate license until after the sales transaction was closed. His statement that he had talked with the other appellees and they had told him they "never heard of Connie Peyton" until the suit was filed; and that they had also told him that they had not known of the association of White and Ellison with Peyton are obviously hearsay and would not be admissible in evidence. Another affidavit was filed by Roy Whittenburg, president of the Anchor Company, the purchaser of the ranch. He stated he represented his company in the transaction and that Connie Peyton "never talked with me about the sale * * * at any time."

■ On the other hand, White filed affidavits both in support of appellants' motion and in opposition to appellees' motion. He asserted that before entering into the transaction he and Ellison associated themselves with Connie Peyton; and that the transaction between the parties "was conducted" by Connie Peyton as provided for by Section 7(b) of Article 6573a. It is apparent the affidavits are in direct conflict with each other. However, in summary judgment proceedings, courts are not to weigh the evidence or determine its credibility. It is the court's duty to determine if there are any fact issues to be tried. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W. 2d 929. Fact issues were raised as to Connie Peyton's association with White and Ellison and her conduct of the real estate transaction. We are of the opinion the trial court erred in granting appellees' motion for summary judgment. These fact issues must be resolved by a trier of the facts.

The judgment of the trial court is reversed and the cause remanded for a trial on the merits.