Carol B. SILVERTHORNE, Appellant,

v.

Robert John MOSLEY and R. John Mosley, P.C., Appellees.

No. 03–95–00202–CV.

Court of Appeals of Texas, Austin.

Sept. 18, 1996.

Rehearing Overruled Oct. 23, 1996.

Jesse L. Whittenton, Walker, Bright & Whittenton, P.C., Austin, for Appellant.

Lou McCreary, Austin, for Appellees.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

JONES, Justice.

The opinion filed herein on May 22, 1996 is withdrawn, and the following is issued in lieu thereof.

Appellees Robert John Mosley and R. John Mosley, P.C. (collectively "Mosley") sued Carol B. Silverthorne, appellant, on an attorney's fee contract that Mosley alleged had been partially assigned to him. Following a bench trial, the trial court awarded Mosley judgment for $66,000 plus interest. The effect of the trial court's judgment was to hold an agreement between a law firm and its former associate to be a valid and enforceable assignment of a portion of an existing contingent-fee contract between the law firm and one of its clients. We will reverse and render.

## FACTUAL AND PROCEDURAL BACKGROUND

Silverthorne hired Larry W. Kimes, P.C., to represent him in a lawsuit filed against a coal-mining company for insufficient royalty payments. Silverthorne and Kimes entered into a contingent-fee agreement whereby Kimes would receive as his fee one third of any recovery in the suit. Mosley, a recent law-school graduate, worked as an associate for Kimes. Mosley worked extensively on Silverthorne's "coal case" during the period of his employment from approximately February 1991 until September 1993. In return for Mosley's work on the case, Kimes orally promised to pay Mosley twenty percent of the fees collected in connection with the lawsuit. Shortly before the eventual settlement of the case, Mosley left his employment with the firm.

On February 2, 1994, Kimes paid Mosley $24,000, representing twenty percent of a $120,000 payment Silverthorne made to Kimes in partial payment of the $450,000 fee earned on the case. Fearing that Kimes would not pay him the promised percentage on the remainder due from Silverthorne, Mosley notified Silverthorne orally and in writing of his agreement with Kimes. Silverthorne declined to pay Mosley directly due to his own contractual agreement with Kimes. Silverthorne paid the remaining $330,000 in attorney's fees to Kimes. A dispute arose between the two attorneys, and Kimes refused to pay Mosley any further sums. Kimes later filed bankruptcy.

After Silverthorne refused further demand for payment, Mosley brought this suit to collect the balance due him under his fee agreement with Kimes. Mosley contended that Kimes's oral agreement constituted a partial assignment by Kimes of his contractual rights under his contingent-fee contract with Silverthorne. He further argued that Silverthorne had received the requisite notice of the valid assignment and acted at his peril by making payment in full to Kimes. The trial court agreed and awarded Mosley damages of $66,000, representing twenty percent of the $330,000 in attorney's fees paid by Silverthorne after notification of Kimes's promise to Mosley.

## DISCUSSION

In three points of error, Silverthorne argues that (1) he was entitled to assert the affirmative defense of illegality; (2) Kimes's promise to pay Mosley was not a valid assignment because it was not in writing; and (3) Kimes's promise to pay Mosley did not entitle Mosley to recover from Silverthorne because it was purely a contract between the attorneys. Specifically, in point of error three, Silverthorne argues that the arrangement between Mosley and Kimes was strictly for allocating the fee recovered by Kimes and was not an assignment of his underlying contractual rights. We agree.

Mosley asserts that Kimes's promise constitutes an assignment to him of a portion of Kimes's interest in the contingent-fee agreement with Silverthorne, or at least that the circumstances of this case give rise to an equitable assignment. The law in Texas is firmly established, however, that a mere promise to pay a debt from a designated fund, either one then in existence or one expected to come into existence in the future, creates neither an assignment nor an equitable assignment.

For example, in *Central National Bank v. Latham & Co.,* 22 S.W.2d 765 (Tex.Civ. App.—Waco 1929, writ ref'd), Smith, an attorney, represented Early–Foster Company in a proceeding before the Interstate Commerce Commission. The parties had a verbal agreement, confirmed in writing, that Smith was to be paid thirty percent of the amount recovered in that litigation:

> It appears ... that it was agreed that Early–Foster Company was to collect the entire award, if any, made in its favor against said railway company by the Interstate Commerce Commission, and that said Early–Foster Company agreed and promised to pay to said Smith 30 per cent of the amount so received as compensation for his services.

*Id.* at 767. In a later dispute with other creditors of Early–Foster Company, Smith claimed this agreement gave rise to an equitable assignment to him. The court disagreed, holding that the agreement did not

meet the requirements for such an assignment:

> To constitute an equitable assignment, there must be an appropriation of the fund pro tanto, either by an order on such specific fund, or by such a transfer thereof that the holder of the fund is authorized to pay the amount directly to the creditor without the further intervention of the debtor. To state the proposition more succinctly, an equitable assignment can be effected only by surrender of control over the funds or property assigned. Conversely, *a mere agreement, whether by parol or in writing, to pay a debt out of a designated fund, is not of itself sufficient; there is lacking the specific appropriation of the fund pro tanto and surrender of control thereof.*

*Id.* (emphasis added).

Likewise in *Koenig v. Rio Bravo Oil Co.*, 24 S.W.2d 14 (Tex. Comm'n App.1930, judgm't adopted), where a debtor had promised to pay for drilling an oil well "out of one-eighth of the first oil run," the commission of appeals held that no assignment or equitable assignment was created:

> An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund-any authority to collect, or any power of revocation. If he do[es], it is fatal to the claim of the assignee. The transfer must be of such a character that the fund holder can safely pay, and is compellable to do so though forbidden by the assignor.

*Id.* at 16 (quoting *Christmas v. Russell,* 81 U.S.(14 Wall.)69, 20 L.Ed. 762 (1872)). Numerous Texas cases support this rule. *See White v. Cooper,* 415 S.W.2d 246, 248–49 (Tex.Civ.App.—Amarillo 1967, no writ) (holding that promise to pay real estate broker at time of closing from money held by bank did not create assignment or equitable assignment); *Cooper v. Cocke,* 145 S.W.2d 275, 279–80 (Tex.Civ.App.—Amarillo 1940, no writ) (holding that agreement that "if and when Mr. Vaughn ever got the money, he would come and pay it to me" did not meet test of equitable assignment); *Empire Mortgage Co. v. Morgan Lumber Co.,* 292 S.W. 557, 559 (Tex.Civ.App.—Amarillo 1927, no writ) (holding that promise to pay for lumber from money being held by bank was insufficient); *Patterson v. Citizens' Nat'l Bank,* 236 S.W. 130, 130–31 (Tex.Civ.App.—Amarillo 1921, no writ) (holding that promise to repay bank out of money received from selling farm produce did not create equitable assignment); *see also Davis & Goggin v. State Nat'l Bank,* 156 S.W. 321, 327 (Tex.Civ.App.—El Paso 1913, writ ref'd).

The same rule apparently prevails throughout the country. *See* Restatement (Second) of Contracts § 330(1) (1979) ("A contract . . . to transfer proceeds to be received in the future by the promisor[ ] is not an assignment."); E. Allan Farnsworth, *Contracts* § 11.3, at 754–55 (1982) ("Sometimes an obligee (B) promises that he will collect money owed him by an obligor (A) and pay it to a promisee (C). Though the obligee's (B's) promise may be enforceable as a contract, there is no assignment. . . . [T]he promisee's (C's) only right is against the obligee (B), not against the obligor (A).").

In the present case, Mosley's own testimony established conclusively that he was to be paid *by Kimes* based on the amount of fees that Kimes *collected* in connection with the case:

A. [by Mosley] I was paid based upon a percentage of my collections, based upon the fees that I generated.

Q. Okay. Now did that include both hourly rate fees and contingent fees?

A. Yes, it did.

Q. *And how are you paid on your hourly rate cases?*

A. One-half of my billed time which is collected.

Q. Can you give the Court just a concrete example of that, please, sir?

A. Say, when I began working with Larry, it was—my rate was $100 an hour. If I put an hour in on the work, I would receive $50 for that work.

THE COURT: If the client paid?

THE WITNESS: Yes.

THE COURT: But not until the client paid?

THE WITNESS: That's correct.

\*    \*    \*    \*    \*    \*

Q. [O]n your contingency fee cases you had a ratio based on your hourly rate, the work, the amount of fee recovered, and it approximated, did you say, 40 percent?

A. Based on that example, yeah.

Q. Okay. And that's how you shared fees [on], as they are called, your contingent fee cases?

A. That's correct.

Q. And that, of course, assumes that you did made [sic] a recovery and collected the money?

A. That's correct.

Although Kimes's "formula" for paying Mosley worked out to be approximately forty percent in other contingent-fee cases, Mosley testified that he and Kimes specifically agreed on twenty percent for the coal case:

Q. ... [Kimes] would recover 80 percent of any and all attorney's fees when as and if paid on this case; am I correct?

A. That's correct.

Q. And your share of the fee would be 20 percent of the attorney's fees when as and if recovered; am I correct?

A. That is correct.

There is no evidence that Kimes ever gave any instruction or order to Silverthorne to pay twenty percent of the fees directly to Mosley. Nor is there any evidence that Kimes authorized Mosley to collect his compensation directly from Silverthorne.

■ According to Mosley, Kimes agreed to pay twenty percent of any fee collected in conjunction with Silverthorne's representation. Such an agreement does not rise to the level of effectuating an assignment or equitable assignment. There is simply no indication or inference that Kimes intended to transfer present ownership of part of the law firm's contract with Silverthorne, nor to surrender control over any fees that might later be owed by Silverthorne. Accordingly, based on the authorities cited above, Mosley cannot recover from Silverthorne the portion of the proceeds promised him by Kimes.

In his motion for rehearing to our original opinion, Mosley asserts that we are reversing the trial court's judgment on a ground not assigned as error by Silverthorne. We disagree.

■ In reviewing the grounds raised in Silverthorne's brief, we are guided by the principle that we must construe rules on briefing liberally. *Anderson v. Gilbert,* 897 S.W.2d 783, 784 (Tex.1995). "[A] substantial compliance with these [briefing] rules will suffice in the interest of justice." Tex. R.App.P. 74(p). Specifically, points of error should be construed liberally "in order to adjudicate justly, fairly and equitably the rights of the litigants." *Williams v. Khalaf,* 802 S.W.2d 651, 658 (Tex.1990). "A point is sufficient if it directs the attention of the appellate court to the error about which complaint is made." Tex.R.App.P. 74(d). The reviewing court "should consider the parties' arguments supporting each point of error and not merely the wording of the points." *Anderson,* 897 S.W.2d at 784.

In the present case, Silverthorne's third point of error states: "The trial court erred in holding appellant Silverthorne, as the client, liable to Mosley on a contract dispute that is solely between attorneys." The "argument and authorities" portion of point three states, in part:

According to Corpus Juris Secundum:

"Where an attorney engages an associate counsel, the assistant counsel's compensation **is purely a question of contract between the attorneys.**" (emphasis added)

C.J.S. Attorney & Client § 148, P. 204. Simply and adequately stated, the dispute in this case concerns Kimes and Mosley only. Silverthorne, as the client, is not a proper party to this dispute, and in no way should be held liable to Mosley.

. . . .

... [T]he trial court erred in holding that Mosley possessed a valid assignment in this cause of action as the dispute is

simply one between attorneys, which in no way concerns Silverthorne, the client.

Liberally construed, Silverthorne contends in this third point of error that the oral fee-splitting agreement between Mosley and Kimes was not a valid assignment and had no effect on Silverthorne's rights or duties under the previously executed contingent-fee agreement between Silverthorne and Kimes.[1] Having satisfied ourselves, based on the undisputed evidence, that the oral agreement did not purport to give Mosley any control over the fees to be collected from Silverthorne, we have simply addressed the pure legal question of whether such an agreement could, by virtue of being an assignment or an equitable assignment, have imposed on Silverthorne a duty to pay a portion of the fees to Mosley. We have answered in the negative. Thus, we agree with Silverthorne that, for all intents and purposes, "the dispute is simply one between attorneys, which in no way concerns ... the client."

We sustain point of error three. In light of this holding, we need not address Silverthorne's other points of error.[2]

## CONCLUSION

We reverse the judgment of the trial court and render judgment that Mosley take nothing against Silverthorne.

CARROLL, C.J., dissents.

CARROLL, Chief Justice, dissenting.

The dissenting opinion filed herein on May 22, 1996 is withdrawn, and the following is issued in lieu thereof.

I respectfully dissent. I find no merit in the bases on which Silverthorne alleges the assignment is illegal and invalid. I therefore would affirm the judgment because evidence supports the trial court's finding that, when paying Kimes the entire fee, Silverthorne wrongly ignored Kimes's assignment of part of the fee to Mosley. In doing so, Silverthorne ignored Kimes's statement regarding the split of the fee and Mosley's written and personal reminders.

I agree with the court's decision not to reverse on any of the four grounds of invalidity or illegality argued by Silverthorne in points of error one and two. The statutes and rules he contends the Kimes–Mosley agreement violated do not apply to an assignment of a fee between attorneys.[1] Neither does the lack of a writing invalidate the assignment. Debts, choses in action, and other contract rights can be assigned orally unless some statute or the underlying contract requires a written transfer. *Villiers v. Republic Fin. Servs., Inc.*, 602 S.W.2d 566, 569 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.); *see also First Nat'l Bank of San Angelo v. Sheffield,* 475 S.W.2d 820, 821 (Tex. Civ.App.—Austin 1972, no writ). Neither the Kimes–Silverthorne contract nor the statutes require a written transfer of a portion of the fee. I would overrule these first two points of error.

The court instead sets out the law of equitable assignment and decides that the evidence conclusively shows that the Kimes–Mosley agreement does not satisfy the requirements. I disagree. I would find that evidence supports the finding of an equitable assignment.

Silverthorne's knowledge of and benefit from Mosley's work influences my decision. Silverthorne knew that Kimes hired Mosley to work on the coal case. Mosley worked about 350 hours on the case while in Kimes's office and continued to work on it after leaving Kimes's office. He even volunteered to check the settlement agreement. His work helped achieve the settlement. Kimes ac-

---

1. Our construction of Silverthorne's argument cannot be too far off the mark, because in the appellees' brief Mosley responded to point of error three by reciting the elements of an assignment, asserting that those elements are met in this case, and arguing that having been given notice of the assignment, Silverthorne was obligated to pay the assignee, Mosley.

2. Specifically, we do not address whether all or a portion of a contingent-fee agreement between an attorney and a client is assignable by the attorney without the consent of the client, nor whether any such assignment must be in writing.

1. *See* Tex. Gov't Code Ann. § 82.065(a) (West Supp.1996) and Tex. Disciplinary R. Prof. Conduct 1.04 (State Bar rules art. X, § 9) (both requiring that legal-fee contracts between attorney and *client* must be written); *see also* Tex. Prop.Code Ann. § 12.014 (West 1984) (governing transfers of judgments or causes of action).

knowledged Mosley's work by paying him twenty percent of Silverthorne's initial payment. Kimes's check to Mosley bore the notation "partial payment."

A larger factor in my decision is Silverthorne's knowledge of the Kimes–Mosley agreement and his disregard for Mosley's warning of trouble regarding its performance. Kimes told Silverthorne during the pendency of the coal case that Mosley would receive twenty percent of any fee earned in the case. After the first fee payment, Mosley, concerned that Kimes would not pass along any more payments, reminded Silverthorne in writing and in person of the Kimes–Mosley agreement. Mosley asked Silverthorne to either pay him directly twenty percent of the balance or pay that twenty percent jointly to Mosley and Kimes. Silverthorne declined to pay Mosley partly because he had contracted with Kimes and not with Mosley. Silverthorne consulted Kimes and, in the face of Kimes's threat that he could sue Silverthorne for the full amount, paid Kimes the remaining $330,000.

The evidence showed more than a mere promise to pay from a designated fund. Kimes did not just promise to pay Mosley something out of his one-third of Silverthorne's $1.5 million recovery; he allotted to Mosley a specific portion, twenty percent, of his one-third. Kimes made no condition that he could refuse to pay Mosley even if Mosley performed, Silverthorne prevailed, and Kimes received his one-third share of the recovery as a fee. That Silverthorne would have risked being sued by Kimes does not mean that he could not "safely pay" Mosley. Kimes initially recognized the validity of his assignment by passing along to Mosley twenty percent of Silverthorne's first payment to Kimes; he evinced no power to deny Mosley's payment. Silverthorne's knowledge of the agreement and Kimes's partial performance of the agreement are, to my mind, critical additional facts that take this case beyond the parameters of the *Latham* case. See *Central Nat'l Bank v. Latham & Co.*, 22 S.W.2d 765, 767 (Tex.Civ.App.—Waco 1929, writ ref'd).

I would overrule Silverthorne's contention in point of error three that he is an innocent trapped in a dispute between Kimes and Mosley. Silverthorne lost his innocence when Mosley visited his office. After a debtor receives notice of a valid assignment, payment by the debtor to the assignor or to any person other than the assignee is made at the debtor's peril and does not discharge the debtor from liability to the assignee. *Buffalo Pipeline Co. v. Bell*, 694 S.W.2d 592, 596 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). When Silverthorne ignored Mosley's request for inclusion in the final check, he joined the fray, however unwillingly or unwittingly.

Though I understand the dilemma in which Silverthorne found himself, I also understand that Mosley provided a service, earned a fee, warned that the fee might not be passed along as agreed, and has not been paid fully. Faced with competing claims, Silverthorne could have and should have paid the sums into the registry of the court through an action of interpleader; he had seen interpleader work in the underlying coal case. The cost of such an action would have been paid out of the funds and the fight between the attorneys would have been left behind along with the risk. I would affirm the judgment because I believe Silverthorne has not presented a basis for reversing the judgment.