## DONALDSON v. LYNCH. (No. 8740.)

(Court of Civil Appeals of Texas. Dallas. Jan. 13, 1923.)

1. **Assignments** ⬲52—**Express or necessarily implied intention to appropriate fund to payment is essential to "equitable assignment."**

To constitute an equitable assignment, the agreement must express an intention to appropriate the fund as a security for the debt, or such intention must appear from the terms of the agreement by necessary implication under a construction of it with reference to the situation of the parties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equitable Assignment.]

2. **Assignments** ⬲52—**Agreement by widow held not to constitute equitable assignment of interest in estate.**

An agreement made by a widow in compromise of a claim by her husband's mother for a share in the husband's estate, whereby the widow agreed to pay a stipulated sum to the mother and deliver certain articles, in consideration of which the mother released all interest in the estate, without any express provision that the payment was to be made from the widow's share in the estate, does not establish an equitable assignment of the widow's interest.

3. **Assignments** ⬲52—**Application for leave to pay from share of estate held not to show prior equitable assignment.**

Where a widow had agreed to pay her husband's mother a stated sum for the mother's relinquishment of all claim of interest in the estate, without expressly agreeing to make the payment from the widow's share of the estate, a subsequent application by the widow as administratrix for leave to pay a portion of that sum from the funds of the estate to be paid against the widow's share does not establish an equitable assignment of the widow's interest to secure the payment of the balance.

Appeal from District Court, Dallas County; J. E. Gilbert, Judge.

Application by Sarah Donaldson against Mary E. Lynch, as administratrix, to have an interest adjudged in the balance due the administratrix from the estate. From a judgment denying the relief entered by the district court on appeal from the probate court, applicant appeals. Affirmed.

Cecil L. Simpson and Taylor & Awtry, all of Dallas, for appellant.

J. J. Fagan and Ross M. Scott, both of Dallas, for appellee.

HAMILTON, J. E. E. Donaldson died intestate on May 13, 1916, leaving as survivors a wife and child, a mother, and brothers and sisters. The surviving wife, who, through a subsequent marriage, became Mary E. Lynch. qualified as administratrix of the estate of E. E. Donaldson. A controversy ensued between the surviving mother, appellant Sarah Donaldson, and other collateral kin, on the one hand, and the surviving wife, appellee Mary E. Lynch, on the other hand, which developed into a contest before the probate court. The contest in that court having terminated favorably to the appellee, an appeal was prosecuted to the district court of Dallas county. There the contest was terminated by means of a compromise entered into between the parties. The compromise agreement was reduced to writing and signed by the parties. It is as follows:

"Whereas E. E. Donaldson departed this life on or about the 13th day of May, 1916, leaving surviving him a wife, Mary E. Donaldson, and one child, Jarda Donaldson, a minor, also a mother, Sarah Donaldson, and brothers and sisters as follows: Roy T. Donaldson, H. L. Donaldson, B. O. Donaldson, Miss Georgia Donaldson, Mrs. James E. Hooper, née Donaldson—and whereas Mary E. Donaldson has agreed to pay Sarah Donaldson the sum of $2,300 in cash and deliver to her the following articles belonging to the estate of E. E. Donaldson, deceased, to wit, one diamond stud, one watch and chain, one pistol, one fish basket and net, and all wearing apparel belonging to the said E. E. Donaldson, deceased; and in consideration of said settlement and the delivery of said articles the said Sarah Donaldson releases, relinquishes and quitclaims unto the said Mary E. Donaldson any and all right, title, and interest that she has or might have as an heir at law, or otherwise, in the estate of E. E. Donaldson, deceased."

At the time the above-copied agreement was executed a consent judgment was entered in the district court, which recited substantially that all the parties appeared and announced ready for trial; that a jury was waived, and all matters in controversy were submitted to the court; that the contestants withdrew their pleadings, waived their exceptions and demurrers, and agreed that judgment might be rendered for Mary E. Donaldson et al., plaintiffs, and further reciting that the court heard and considered evidence and found E. E. Donaldson and Mary E. Donaldson to be husband and wife; that Jarda Ernestine Donaldson was the only child of E. E. Donaldson and Mary Donald-

son, and that all of the estate, personal, real, and mixed, was community property of E. E. Donaldson and Mary E. Donaldson. It was decreed that all of the title and interest in said community property which belonged to E. E. Donaldson should be vested in Jarda Ernestine Donaldson as the only child and heir at law of E. E. Donaldson, deceased, and that the estate belonging to E. E. Donaldson and Mary E. Donaldson (who, as aforesaid, is now Mary E. Lynch, appellee), being their community property, should be vested in moieties in Mary E. Donaldson and Jarda Donaldson, respectively, as survivor and as the only child and heir at law. Other recitals of the judgment are immaterial here, and need not be stated.

Pursuant to carrying into effect the agreement by which appellee agreed to pay appellant $2,300, the former, as administratrix, made application to the probate court of Dallas county for an order permitting her to use $1,400 of the funds in her possession as administratrix in making a payment toward discharging the $2,300 obligation which she assumed by the terms of the settlement, and that it be charged against her community interest in the estate. The court, in compliance with the petition, entered an order permitting the withdrawal from the estate of this sum, and directed that it should be charged against her separate interest in the estate of E. E. Donaldson, deceased. The order having been entered, this sum was withdrawn from the estate and applied upon the $2,300 which appellee had bound herself to pay as a part consideration for the compromise agreement.

Subsequent to all the foregoing, on November 22, 1920, the administratrix, Mary E. Lynch (née Donaldson), appellee herein, filed her final account with said estate. The final account contained the following statement:

"Paid to Sarah Donaldson on compromise, $1,400.00, to be charged to Mary Donaldson as an advancement."

The account otherwise contained no recognition of or reference to payment of any part of the $2,300 out of the estate.

Appellant, having ascertained that appellee was about to close the estate without making any provision with reference to it for the completion of the compromise settlement agreed upon, filed an application in the probate court, and, by intervention, sought to have an interest in the estate adjudged to her to the extent of $900, the balance due on the compromise agreement, to be fixed and charged against the community interest of appellee. The application was denied. From the probate court's order denying the application an appeal was prosecuted to the district court, where the case was tried and judgment again rendered in favor of appellee denying the relief. From this decree the appeal is prosecuted.

The appeal is rested upon the proposition that by the terms of the agreement between the parties appellee made an equitable assignment of her community interest in the estate of E. E. Donaldson to the extent of the agreed amount to be paid appellant, and that, such equitable assignment having been made to appellant by appellee, the former is entitled to assert a right as distributee in the estate to the extent of such assignment, and thus fix a definite interest in the estate to the extent of the $900 balance unpaid.

[1] To constitute an equitable assignment the agreement between the parties must express an intention to appropriate the fund as a security for the debt, or it must appear from the terms of the agreement by necessary implication under a construction of it with reference to the situation attending and the circumstances surrounding the agreement that a mutual understanding existed at the time the contract was made to the effect that the fund should be security for the payment of the indebtedness. An agreement can be said to result in an equitable assignment only when it expressly embraces, or when by necessary implication, in the light of the situation and circumstances in which it was made, there bodies forth from it the definite conclusion that the intention of the parties comprehended this feature.

[2, 3] There is nothing in the express terms of the agreement made between the parties which can be construed into an intention either to pay the money out of appellee's community interest in the estate or to fix a lien upon such interest. The record is barren of any proof as to whether or not appellee was solvent and possessed of sufficient means aliunde this particular fund with which to discharge the obligation; or that appellant relied upon payment from any particular source of funds. The application to the probate court to be permitted to withdraw from appellee's interest in the estate $1,400 for the purpose of applying it in discharge of the indebtedness which was made some time after the agreement was entered into does not necessarily impute an implication that it was intended by the agreement to assign an interest to the extent of $2,300 in the fund when the agreement was made. Nor does the judgment entered by the court upon such application tend to such effect. The application and the judgment, considered either separately and apart from all other transactions, or in conjunction with them, we think clearly disclose no more than an intention to make part payment of a personal obligation out of the funds, to which appellee's fiduciary relation rendered it proper for her to seek and obtain the approval of the court for such payment, although the money out of which she expressed in her application the intention to make the payment had been adjudged in fact and in law to be her own property. To extend beyond the confines of such

purpose and intention the effect of the language of appellee's application, considered in relation to all else in the record, would be to read into the agreement an implication of an equitable assignment based solely upon the subsequent expression of a desire and purpose to withdraw from the estate a portion of the funds which belonged to her in order to apply it upon a debt. This would be to ignore the requirement that an intention to fix a lien upon the fund must appear. At most, however considered, the application to withdraw the $1,400 conveys the idea merely of an intention and purpose to pay a portion of the debt out of that particular fund, and nothing more. An expression of an intention or a promise to pay out of a particular fund, of itself, does not constitute an equitable assignment.

Distinguished counsel for appellant insist that the acts and conduct of the parties, considered in connection with the entire situattion, fairly indicate the existence of an intention to create an equitable assignment, and they primarily base their proposition upon the authority of Davis & Goggin v. State National Bank (Tex. Civ. App.) 156 S. W. 321. An examination of the facts upon which the opinion in that case is rested, in our view, will disclose that there exists no analogy between the facts of that case and the instant case to constitute it authority to sustain the position taken by able counsel for appellant.

The evidence in the case above cited was conclusive that Davis & Goggin looked exclusively to the particular fund in which an equitable assignment was declared to exist for the payment of attorney's fee. At the time Davis & Goggin were employed as attorneys, J. P. Casey, who employed them, discussed with them his ability to pay a fee, and it was definitely revealed, and the facts showed without any dispute, that he was unable to pay any fee except out of funds which were in the hands of the State National Bank. No written agreement was made, but Waters Davis, one of the appellants in the case, who conducted the negotiations with Casey, testified that when the attorney's fee was agreed upon Casey gave his firm an interest in the fund held by the bank or receiver at the time. He testified that in order to secure the fee Casey verbally assigned so much of the amount to be recovered as would be sufficient to satisfy the fee. After suit was filed written notice was given the bank which held the funds, calling its attention to the assignment made by Mr. Casey. The proof is not disputed to the effect that, when the notice was communicated to the bank which held the funds, it acquiesced in the understanding as to an assignment revealed to it on behalf of Davis & Goggin. Casey, himself, testified that when he employed Davis & Goggin he agreed to pay them out of the particular fund in which they asserted an equitable assignment. At the time he made the agreement they were determining his ability to pay a fee. He testified that Davis spoke to him about a written assignment, and that he was to have executed a written assignment, but that he did not remember whether he executed it or not. He expressly stated that his agreement was that payment was to be made out of the fund to Davis & Goggin, and that it was to be security for the fee. It is true that he was made to say in the course of examination that, as he understood the agreement, it was simply that Davis & Goggin were to be paid out of the fund in the bank, but his testimony as a whole, we think, supports rather than contradicts the unequivocal and positive testimony on behalf of Davis & Goggin to the effect that an assignment was made. Casey stated that he did not execute any assignment to Davis & Goggin, so far as he recollected, but the testimony was given in a connection which clearly reflects that he had in mind, not the terms of the contract, but rather the manual performance of signing his name to an expression of it in writing. His testimony abounded in such expressions as that he understood the attorney's fee was to come out of the fund; that the fund was to be security for the fee; that the fee went against the fund; that it was a lien against the fund in the bank, and that the bank had to pay it. He testified that he did not conceive the difference between an assignment and an agreement. We think the testimony in that case, carefully considered as a whole, reflects, without real contradiction, a mutual intention upon the part of both parties that Davis & Goggin were to look to the particular fund for payment of their fee, Casey having no other means of making payment, and that a definite interest in the fund to the extent of the amount of the fee was set apart to Davis & Goggin to be paid to them when a judgment was finally obtained.

In this case, on the other hand, there is no evidence, we think, or circumstance which necessarily implies that appellant was looking exclusively to appellee's community interest in the estate for payment, or that the intention existed upon the part of appellee to make payment out of such fund, and no other. A judgment for appellant based upon all the facts and circumstances of the case would constitute nothing more, in our opinion, than a presumption derived from them to the effect that an intention to fix a lien upon the funds existed, and we cannot substitute such presumption for one of the two alternate essentials necessary to create an equitable assignment, which are, as above stated, an express intention, or one arising by necessary implication from all the facts and circumstances.

The judgment of the court below is affirmed.