## INSURANCE CO. OF NORTH AMERICA v. CRIPPEN.

### No. 14075.

Court of Civil Appeals of Texas. Dallas.
June 24, 1949.

Rehearing Denied Sept. 16, 1949.

298

Thompson, Knight, Wright, Weisberg & Simmons, Pinkney Grissom, and Wm. E. Collins, all of Dallas, for appellant.

Webster Atwell, of Dallas, for appellee.

YOUNG, Justice.

This suit was brought by Trustee in Bankruptcy for Lone Star Air Cargo Lines, Inc., a bankrupt, against appellant, claiming an indebtedness grounded upon a contract of insurance. At close of testimony to a jury both parties moved for peremptory instruction. Defendant's motion was overruled, that of plaintiff sustained; and upon directed verdict, judgment was entered against defendant for the sum of $2,779.47, together with legal interest from date of trial, from which judgment the insurance company has prosecuted an appeal.

Explanatory of the ultimate issues herein is the following summary of facts and evidence, stated generally in order of occurrence: On May 10, 1946, appellant issued to Kesterson, Inc., of Knoxville, Tennessee (Tom O. Kesterson, President), owner of a Douglas C-47 airplane, its Aircraft Hull Policy covering for one year all risks by way of physical damage, whether in flight or not, loss payable to insured, also Tom O. Kesterson and Morris Plan Bank as interest may appear. Permitted use of the plane under policy terms was for "All operations incidental to the business of the insured (Kesterson, an air service operator) including operations for hire or reward."

The policy was countersigned by Associated Agency, Inc., as Agent and bore the "sticker" of J. E. Lutz & Company (referred to in testimony as "an underwriter" of defendant insurer), both of Knoxville, Tennessee.

On August 17, 1946, Kesterson, Inc., owner of plane, entered into a written agreement of rental to Lone Star Air Cargo Lines, Inc., lessee, agreeing among other things "to fly and operate said airplane in a careful, prudent and cautious manner * * *," and at end of designated term of 30 days "to restore said airplane to owner at Municipal Airport, Knoxville, Tennessee, in an airworthy condition and in as good condition as it was at the date and time it was received by renter, reasonable wear and tear excepted"; providing for a final inspection on redelivery without cost to owner, making all necessary repairs at owner's expense except for price of parts; emphasizing in preceding paragraphs that owner was liable for cost of parts used in repairs when installation thereof becomes necessary because of ordinary wear and tear; an addendum to the lease providing that the "owner will pay the full and entire cost, including labor, parts and any and all other costs which might be incurred by reason of a major

overhaul of the airplane, its engine, or any other parts of the airplane including any major repairs that might be necessary, including but not limited to any repairs where the cost of labor for such repairs runs in excess of $100.00." Another proviso of the instrument was that "Owner agrees to pay the premiums and keep in force during the term of this contract the insurance policies, the photostates of which he has furnished renter."

Lone Star Air Cargo Lines, Inc., renter in the lease above mentioned, may be hereinafter referred to as Bankrupt or Cargo Lines; and further concerning said lease, Kesterson, Inc., on August 21, 1946, received from J. E. Lutz & Company, Inc., signed by John C. Jacobs, Vice President, the following letter: "Dear Mr. Kesterson: This will confirm our telephone conversation of this date, at which time I advised you that it was not necessary to issue an endorsement to specifically cover the interest of the Lone Star Air Cargo Company; however, if such endorsement is desired, the Company has agreed to the issuance of same without cost."

The plane was damaged on early morning of August 28, 1946, by wheel falling into an unmarked hole while taxiing to parking space, and a Mr. Hedges, then traffic manager of Bankrupt, at once communicated with Kesterson relative to repair of plane; the latter on August 30 coming to Bankrupt's office at Dallas and signing a letter addressed to Cargo Lines, viz: "In accordance with our telephone conversation of this date, you are authorized to proceed in the repair of Douglas C-47—NC-52200. You are also authorized to contact the Insurance Company and make the necessary arrangements with them for the approval of such repairs. Authority is granted for Mr. Anthony F. Spann of your organization to accept the aircraft after the repairs have been accomplished, as my agent." Coincident with this letter, Mr. Hedges, in telephone communication with A. L. Tyler, appellant's assistant manager, Marine Department Home Office at Philadelphia, secured the latter's admission of liability for repairs necessary to put the damaged plane back into service. Bankrupt then proceeded to make said repairs, and the cost thereof in amount of $2,829.47 was then agreed to by appellant insurer through its adjuster and paid by Bankrupt; who, on October 17, requested reimbursement on part of said insurer as per letter, viz: "Enclosed herewith are eight paid invoices totalling $2,829.47. These invoices cover the repair of aircraft number NC-52200, which aircraft was involved in an accident at the Teterboro, New Jersey airport on or about August 26. 1946. At the time of the accident, this aircraft was leased by Lone Star Air Cargo Lines from Kesterson, Inc. and covered under North American policies number AHN-1260 and number AVL-1111. In letter to Kesterson, Inc. under date of August 21, 1946 from John C. Jacobs, Vice-President of J. E. Lutz and Company, Inc., Mr. Kesterson, owner of said aircraft, was advised that it was not necessary to issue an endorsement to Lone Star Air Cargo Lines on the two policies referred to above. In a letter addressed to Lone Star Air Cargo Lines under date of August 30, 1946 from Tom O. Kesterson, President of Kesterson, Inc., copy of which letter is enclosed herewith, said Mr. Kesterson stated that Lone Star was authorized to proceed in the repair of aircraft NC-52200. Consequently, such repairs were performed under the supervision of Lone Star Air Cargo Lines' personnel and the aircraft is now in service. I trust that all necessary information is included herewith so that you may determine the correctness of the repairs and charges paid by Lone Star Air Cargo Lines, and at your earliest convenience remit the total amount to this company."

Thereafter on October 25, 1946, a Mr. Thursby, adjuster for appellant, requested Bankrupt to forward above mentioned contract involving lease of the plane which was done; and beginning December 6, in a series of wires, first to the adjuster and then to defendant insurer, Bankrupt requested information as to when repayment of such repair bill would be made; receiving from Mr. Tyler, on February 21, 1947, a wire and copy of letter to defendant's Cincinnati Office reading: (Wire) "Draft on loan form payable to Kesterson and you

$2779.47 representing damage less $50 deductible sent Kesterson via our Cincinatti office today stop This method settlement adopted to avoid delay pending determination by us technical question who ultimately entitled payment. Your patience and cooperation appreciated." (Inter-Office letter) "This loss should have been paid some time ago but there has been considerable confusion as to the manner in which payment should be made. There are valuable subrogation rights to protect and we are accordingly enclosing herewith our draft on the usual borrowed and loan form payable to the insured (less Matheny's, Inc.) who are no longer interested, according to information received from the underwriters, Morris Plan Bank of Knoxville, Tenn. (mortgagee) and Lone Star Air Cargo Lines, Inc., in the sum of $2,779.47. The Lone Star agreed with our surveyor that the damages were $2,829.47 and there is a $50 deductible to be applied. It is our understanding that Mr. Kesterson rented this aircraft to Lone Star Air Cargo Lines, Inc. and agreed to keep the insurance in effect for their benefit. Notification of the arrangement was given to our underwriters who consented to the agreement. We are also enclosing authority form to be executed by all concerned except the mortgagee and the proof of loss to be executed by Mr. Kesterson in exchange for the draft. If there are any further documents which may require execution in order to assist us in taking appropriate action against the Teterboro Airport, we have no doubt that our insured and his lessee will give us full cooperation. In reply to telegraphic inquiries from Dallas, we have sent a wire to the Lone Star today that draft and documents have gone forward to Mr. Kesterson via your office. Your prompt attention to this matter will be greatly appreciated, I have no doubt, by all concerned."

Bankruptcy involving the Air Cargo Lines intervened on February 26, 1947, through filing of a reorganization proceeding and on February 28, instead of delivering the draft mentioned in foregoing letter and telegram, appellant issued another draft to Kesterson and/or Matheny's, Inc.

and Morris Plan Bank of Knoxville, Tennessee; excluding Bankrupt as payee, it having never been reimbursed in the amount of $2,829.47 expended in repair of said plane.

Pursuant to request under Rule 169, Texas Rules of Civil Procedure, the following admissions were made by defendant: (1) That the "Aircraft Hull Policy," here involved, was in full force and effect at all material dates; (2) that defendant insurer was advised of the rental contract between Kesterson and Cargo Lines, dated August 17, 1946, and was furnished copy thereof; (3) that the letter of October 17, 1946 from Cargo Lines together with enclosures therein detailed was received by defendant; (4) that Thursby, insurer's adjuster, reported to defendant that the plane was damaged to the extent of $2,829.47, which sum defendant approved as the amount of its liability; (5) and with reference to Tyler's letter of date 2-21-47 to the Cincinnati Office, "Defendant neither admits nor denies * * * but states that such alleged letter shows upon its face that it was an inter-office communication of the defendant, and the defendant denies that any such draft as therein described was ever delivered."

Appellee's main cause of action was upon appellant's contract of insurance, charging a waiver of policy provisions that same could not be changed or altered except by a writing endorsed thereon; alternatively asserting an agreement on part of appellant to reimburse it for the agreed amount of repairs; also that the Kesterson letter of August 30, 1946, was a virtual assignment of policy proceeds of which appellant had express notice; and the latter's points of error are primarily devoted to a denial of liability under any theory of recovery just outlined.

■ Taking up these grounds of action in inverse order, the Kesterson letter is no more than an authorization for the Bankrupt to make the necessary repairs and negotiate with appellant relative to establishment of amount of loss. We agree with appellant that no authority to collect and

keep the policy proceeds—a prima requisite of an equitable assignment—can be read into this writing. Donaldson v. Lynch, Tex.Civ.App., 247 S.W. 565. Also, a careful reading of the A. L. Tyler deposition indicates a categorical denial of any promise on part of appellant to pay Bankrupt for repairs to the damaged plane; hence an issue of fact is raised in such connection.

■ On the other hand, it appears equally certain that the Cargo Lines acquired rights as a co-insured under the policy by reason of Kesterson's undoubted request that coverage be extended to include the lease, followed by appellant's acquiesence and ratification (see letter of Bankrupt, October 17, 1946 and Tyler's admissions in letter of 2-21-47). Explanatory of defendant's action in omitting Cargo Lines from the final money draft for repairs, Mr. Tyler stated by deposition, in effect, that Bankrupt's name had first been included at request of Kesterson; that otherwise Bankrupt had no obligations under the lease to be protected by the Aircraft Hull Policy; that when Kesterson countermanded his request, he, Tyler, had no alternative except to make payment to the assureds named in the policy. We also gather from the testimony of witness Tyler that the letter of J. E. Lutz & Company (initially unauthorized in the record) merely permitted a continuance of the Hull coverage afforded by the policy in favor of the original assureds, notwithstanding said lease of the plane.

■ In reaching above conclusions, we think that defendant's said witness has misunderstood the clear import of antecedent instruments and communications, at least in the following particulars: First, he has overlooked the plain language of aforesaid letter of February 21 at which time it was his "understanding that Mr. Kesterson rented this aircraft to Lone Star Cargo Lines, Inc. and agreed to keep the insurance in effect for their benefit. Notification of the arrangement was given to our underwriters, who consented to the agreement." Second, it was unnecessary that a consent be secured from either defendant or underwriter to the immediate lease because the policy on its face covered all uses incidental to the business of Kesterson, including "operations for hire or reward"; the word "hire" meaning "the price, reward or compensation paid, or contracted to be paid, for the temporary use of a thing * * *." Webster's New International Dictionary, Third Ed. And third, the lease plainly created an obligation on the part of Bankrupt that the policy could be extended to cover. This contract of rental was not ambiguous and required Bankrupt to operate the plane in a careful, prudent and cautious manner, with well qualified pilots, and at end of term to restore it to owner in an airworthy condition and in as good condition as at the date and time received, *reasonable wear and tear excepted*,—obviously including repairs resulting from the accident in question; the lease addenda imposing cost of "major repairs" upon owner, having reference to any overhaul of plane and motors *necessitated by ordinary wear and tear.*

■ Appellant admittedly received the letter from appellee dated October 17, stating, along with other material facts, that at "time of the accident, this aircraft was leased by Lone Star Air Cargo Lines from Kesterson, Inc. and *covered* under North American policies No. AHN 1260 * * *" (Emphasis ours): to which insurer made no objection or denial. Supplemental to this was the Tyler letter of February 21, resulting in an unequivocal and affirmative recognition by defendant of appellee's obligation under the lease and its interest in the proceeds of insurance. In view of its full knowledge and acquiescence implicit in said inter-office communication of February 21, copy of which was furnished Bankrupt at the time, we conclude that appellant is in no position to claim that there was no resulting waiver of policy provisions in favor of the Bankrupt to extent of these repairs; payment of the loss to Kesterson not discharging its obligation to appellee.

Appellant further charges erroneous admissions of evidence in various particulars. In reaching the conclusion that appellee is entitled to recover on the policy as a matter of law, all the testimony com-

plained of under these several points may well be disregarded; the error, if any, incidental thereto, becoming harmless. Judgment of the trial court is accordingly affirmed.