Silverthorne v. Mosley 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING










NO. 03-95-00202-CV







Carol B. Silverthorne, Appellant




v.




Robert John Mosley and R. John Mosley, P.C., Appellees







FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 221,606, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING








 The opinion filed herein on May 22, 1996 is withdrawn, and the following is issued in lieu
thereof.

 Appellees Robert John Mosley and R. John Mosley, P.C. (collectively "Mosley") sued
Carol B. Silverthorne, appellant, on an attorney's fee contract that Mosley alleged had been partially
assigned to him. Following a bench trial, the trial court awarded Mosley judgment for $66,000 plus
interest. The effect of the trial court's judgment was to hold an agreement between a law firm and its former
associate to be a valid and enforceable assignment of a portion of an existing contingent-fee contract
between the law firm and one of its clients. We will reverse and render.



FACTUAL AND PROCEDURAL BACKGROUND


 Silverthorne hired Larry W. Kimes, P.C., to represent him in a lawsuit filed against a coal-mining company for insufficient royalty payments. Silverthorne and Kimes entered into a contingent-fee
agreement whereby Kimes would receive as his fee one third of any recovery in the suit. Mosley, a recent
law-school graduate, worked as an associate for Kimes. Mosley worked extensively on Silverthorne's
"coal case" during the period of his employment from approximately February 1991 until September 1993. 
In return for Mosley's work on the case, Kimes orally promised to pay Mosley twenty percent of the fees
collected in connection with the lawsuit. Shortly before the eventual settlement of the case, Mosley left his
employment with the firm.

 On February 2, 1994, Kimes paid Mosley $24,000, representing twenty percent of a
$120,000 payment Silverthorne made to Kimes in partial payment of the $450,000 fee earned on the case. 
Fearing that Kimes would not pay him the promised percentage on the remainder due from Silverthorne,
Mosley notified Silverthorne orally and in writing of his agreement with Kimes. Silverthorne declined to
pay Mosley directly due to his own contractual agreement with Kimes. Silverthorne paid the remaining
$330,000 in attorney's fees to Kimes. A dispute arose between the two attorneys, and Kimes refused to
pay Mosley any further sums. Kimes later filed bankruptcy.

 After Silverthorne refused further demand for payment, Mosley brought this suit to collect
the balance due him under his fee agreement with Kimes. Mosley contended that Kimes's oral agreement
constituted a partial assignment by Kimes of his contractual rights under his contingent-fee contract with
Silverthorne. He further argued that Silverthorne had received the requisite notice of the valid assignment
and acted at his peril by making payment in full to Kimes. The trial court agreed and awarded Mosley
damages of $66,000, representing twenty percent of the $330,000 in attorney's fees paid by Silverthorne
after notification of Kimes's promise to Mosley.



DISCUSSION


 In three points of error, Silverthorne argues that (1) he was entitled to assert the affirmative
defense of illegality; (2) Kimes's promise to pay Mosley was not a valid assignment because it was not in
writing; and (3) Kimes's promise to pay Mosley did not entitle Mosley to recover from Silverthorne
because it was purely a contract between the attorneys. Specifically, in point of error three, Silverthorne
argues that the arrangement between Mosley and Kimes was strictly for allocating the fee recovered by
Kimes and was not an assignment of his underlying contractual rights. We agree.

 Mosley asserts that Kimes's promise constitutes an assignment to him of a portion of
Kimes's interest in the contingent-fee agreement with Silverthorne, or at least that the circumstances of this
case give rise to an equitable assignment. The law in Texas is firmly established, however, that a mere
promise to pay a debt from a designated fund, either one then in existence or one expected to come into
existence in the future, creates neither an assignment nor an equitable assignment.

 For example, in Central National Bank v. Latham & Co., 22 S.W.2d 765 (Tex. Civ.
App.Waco 1929, writ ref'd), Smith, an attorney, represented Early-Foster Company in a proceeding
before the Interstate Commerce Commission. The parties had a verbal agreement, confirmed in writing,
that Smith was to be paid thirty percent of the amount recovered in that litigation:



It appears . . . that it was agreed that Early-Foster Company was to collect the entire
award, if any, made in its favor against said railway company by the Interstate Commerce
Commission, and that said Early-Foster Company agreed and promised to pay to said
Smith 30 per cent of the amount so received as compensation for his services.



Id. at 767. In a later dispute with other creditors of Early-Foster Company, Smith claimed this agreement
gave rise to an equitable assignment to him. The court disagreed, holding that the agreement did not meet
the requirements for such an assignment:



To constitute an equitable assignment, there must be an appropriation of the fund pro tanto,
either by an order on such specific fund, or by such a transfer thereof that the holder of the
fund is authorized to pay the amount directly to the creditor without the further intervention
of the debtor. To state the proposition more succinctly, an equitable assignment can be
effected only by surrender of control over the funds or property assigned. Conversely, a
mere agreement, whether by parol or in writing, to pay a debt out of a designated
fund, is not of itself sufficient; there is lacking the specific appropriation of the fund
pro tanto and surrender of control thereof.



Id. (emphasis added).

 Likewise in Koenig v. Rio Bravo Oil Co., 24 S.W.2d 14 (Tex. Comm'n App. 1930,
judgm't adopted), where a debtor had promised to pay for drilling an oil well "out of one-eighth of the first
oil run," the commission of appeals held that no assignment or equitable assignment was created:



 An agreement to pay out of a particular fund, however clear in its terms, is not an
equitable assignment; a covenant in the most solemn form has no greater effect. The
phraseology employed is not material provided the intent to transfer is manifested. Such
an intent and its execution are indispensable. The assignor must not retain any control over
the fundany authority to collect, or any power of revocation. If he do[es], it is fatal to the
claim of the assignee. The transfer must be of such a character that the fund holder can
safely pay, and is compellable to do so though forbidden by the assignor.



Id. at 16 (quoting Christmas v. Gaines, 81 U.S. 762, 764 (1872)). Numerous Texas cases support this
rule. See White v. Cooper, 415 S.W.2d 246, 248-49 (Tex. Civ. App.Amarillo 1967, no writ) (holding
that promise to pay real estate broker at time of closing from money held by bank did not create assignment
or equitable assignment); Cooper v. Cocke, 145 S.W.2d 275, 279-80 (Tex. Civ. App.Amarillo 1940,
no writ) (holding that agreement that "if and when Mr. Vaughn ever got the money, he would come and pay
it to me" did not meet test of equitable assignment); Empire Mortgage Co. v. Morgan Lumber Co., 292
S.W. 557, 559 (Tex. Civ. App.Amarillo 1927, no writ) (holding that promise to pay for lumber from
money being held by bank was insufficient); Patterson v. Citizens' Nat'l Bank, 236 S.W. 130, 130-31
(Tex. Civ. App.Amarillo 1921, no writ) (holding that promise to repay bank out of money received from
selling farm produce did not create equitable assignment); see also Davis & Goggin v. State Nat'l Bank,
156 S.W. 321, 327 (Tex. Civ. App.El Paso 1913, writ ref'd).

 The same rule apparently prevails throughout the country. See Restatement (Second) of
Contracts § 330(1) (1979) ("A contract . . . to transfer proceeds to be received in the future by the
promisor[] is not an assignment."); E. Allan Farnsworth, Contracts § 11.3, at 754-55 (1982) ("Sometimes
an obligee (B) promises that he will collect money owed him by an obligor (A) and pay it to a promisee
(C). Though the obligee's (B's) promise may be enforceable as a contract, there is no assignment. . . . 
[T]he promisee's (C's) only right is against the obligee (B), not against the obligor (A).").

 In the present case, Mosley's own testimony established conclusively that he was to be paid
by Kimes based on the amount of fees that Kimes collected in connection with the case:



A. [by Mosley]  I was paid based upon a percentage of my collections, based upon the
fees that I generated.


Q. Okay. Now did that include both hourly rate fees and contingent fees?


A. Yes, it did.


Q. And how are you paid on your hourly rate cases?


A. One-half of my billed time which is collected.


Q. Can you give the Court just a concrete example of that, please, sir?


A. Say, when I began working with Larry, it was -- my rate was $100 an hour. If I put
an hour in on the work, I would receive $50 for that work.


 THE COURT: If the client paid?


 THE WITNESS: Yes.


 THE COURT: But not until the client paid?


 THE WITNESS: That's correct.


* * *



Q. [O]n your contingency fee cases you had a ratio based on your hourly rate, the work,
the amount of fee recovered, and it approximated, did you say, 40 percent?


A. Based on that example, yeah.


Q. Okay. And that's how you shared fees [on], as they are called, your contingent fee
cases?


A. That's correct.


Q. And that, of course, assumes that you did made [sic] a recovery and collected the
money?


A. That's correct.


Although Kimes's "formula" for paying Mosley worked out to be approximately forty percent in other
contingent-fee cases, Mosley testified that he and Kimes specifically agreed on twenty percent for the coal
case:



Q. . . . [Kimes] would recover 80 percent of any and all attorney's fees when as and if
paid on this case; am I correct?


A. That's correct.


Q. And your share of the fee would be 20 percent of the attorney's fees when as and if
recovered; am I correct?


A. That is correct.



There is no evidence that Kimes ever gave any instruction or order to Silverthorne to pay twenty percent
of the fees directly to Mosley. Nor is there any evidence that Kimes authorized Mosley to collect his
compensation directly from Silverthorne.

 According to Mosley, Kimes agreed to pay twenty percent of any fee collected in
conjunction with Silverthorne's representation. Such an agreement does not rise to the level of effectuating
an assignment or equitable assignment. There is simply no indication or inference that Kimes intended to
transfer present ownership of part of the law firm's contract with Silverthorne, nor to surrender control over
any fees that might later be owed by Silverthorne. Accordingly, based on the authorities cited above,
Mosley cannot recover from Silverthorne the portion of the proceeds promised him by Kimes.

 In his motion for rehearing to our original opinion, Mosley asserts that we are reversing the
trial court's judgment on a ground not assigned as error by Silverthorne. We disagree.

 In reviewing the grounds raised in Silverthorne's brief, we are guided by the principle that
we must construe rules on briefing liberally. Anderson v. Gilbert, 897 S.W.2d 783, 784 (Tex. 1995). 
"[A] substantial compliance with these [briefing] rules will suffice in the interest of justice." Tex. R. App.
P. 74(p). Specifically, points of error should be construed liberally "in order to adjudicate justly, fairly and
equitably the rights of the litigants." Williams v. Khalaf, 802 S.W.2d 651, 658 (Tex. 1990). "A point is
sufficient if it directs the attention of the appellate court to the error about which complaint is made." Tex.
R. App. P. 74(d). The reviewing court "should consider the parties' arguments supporting each point of
error and not merely the wording of the points." Anderson, 897 S.W.2d at 784.

 In the present case, Silverthorne's third point of error states: "The trial court erred in
holding appellant Silverthorne, as the client, liable to Mosley on a contract dispute that is solely between
attorneys." The "argument and authorities" portion of point three states, in part:



 According to Corpus Juris Secundum:


 "Where an attorney engages an associate counsel, the assistant counsel's
compensation is purely a question of contract between the attorneys." 
(emphasis added)


C.J.S. Attorney & Client § 148, P. 204. Simply and adequately stated, the dispute in this
case concerns Kimes and Mosley only. Silverthorne, as the client, is not a proper party
to this dispute, and in no way should be held liable to Mosley.

 . . . .

 . . . [T]he trial court erred in holding that Mosley possessed a valid assignment in
this cause of action as the dispute is simply one between attorneys, which in no way
concerns Silverthorne, the client.


Liberally construed, Silverthorne contends in this third point of error that the oral fee-splitting agreement
between Mosley and Kimes was not a valid assignment and had no effect on Silverthorne's rights or duties
under the previously executed contingent-fee agreement between Silverthorne and Kimes. (1) Having satisfied
ourselves, based on the undisputed evidence, that the oral agreement did not purport to give Mosley any
control over the fees to be collected from Silverthorne, we have simply addressed the pure legal question
of whether such an agreement could, by virtue of being an assignment or an equitable assignment, have
imposed on Silverthorne a duty to pay a portion of the fees to Mosley. We have answered in the negative. 
Thus, we agree with Silverthorne that, for all intents and purposes, "the dispute is simply one between
attorneys, which in no way concerns . . . the client."

 We sustain point of error three. In light of this holding, we need not address Silverthorne's
other points of error. (2)



CONCLUSION


 We reverse the judgment of the trial court and render judgment that Mosley take nothing
against Silverthorne.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Reversed and Rendered

Filed: September 18, 1996

Publish
1.   Our construction of Silverthorne's argument cannot be too far off the mark, because in
the appellees' brief Mosley responded to point of error three by reciting the elements of an
assignment, asserting that those elements are met in this case, and arguing that having been
given notice of the assignment, Silverthorne was obligated to pay the assignee, Mosley.
2.   Specifically, we do not address whether all or a portion of a contingent-fee agreement
between an attorney and a client is assignable by the attorney without the consent of the
client, nor whether any such assignment must be in writing.



W.2d 783, 784 (Tex. 1995). 
"[A] substantial compliance with these [briefing] rules will suffice in the interest of justice." Tex. R. App.
P. 74(p). Specifically, points of error should be construed liberally "in order to adjudicate justly, fairly and
equitably the rights of the litigants." Williams v. Khalaf, 802 S.W.2d 651, 658 (Tex. 1990). "A point is
sufficient if it directs the attention of the appellate court to the error about which complaint is made." Tex.
R. App. P. 74(d). The reviewing court "should consider the parties' arguments supporting each point of
error and not merely the wording of the points." Anderson, 897 S.W.2d at 784.

 In the present case, Silverthorne's third point of error states: "The trial court erred in
holding appellant Silverthorne, as the client, liable to Mosley on a contract dispute that is solely between
attorneys." The "argument and authorities" portion of point three states, in part:



 According to Corpus Juris Secundum:


 "Where an attorney engages an associate counsel, the assistant counsel's
compensation is purely a question of contract between the attorneys." 
(emphasis added)


C.J.S. Attorney & Client § 148, P. 204. Simply and adequately stated, the dispute in this
case concerns Kimes and Mosley only. Silverthorne, as the client, is not a proper party
to this dispute, and in no way should be held liable to Mosley.

 . . . .

 . . . [T]he trial court erred in holding that Mosley possessed a valid assignment in
this cause of action as the dispute is simply one between attorneys, which in no way
concerns Silverthorne, the client.


Liberally construed, Silverthorne contends in this third point of error that the oral fee-splitting agreement
between Mosley and Kimes was not a valid assignment and had no effect on Silverthorne's rights or duties
under the previously executed contingent-fee agreement between Silverthorne and Kimes. (1) Having satisfied
ourselves, based on the undisputed evidence, that the oral agreement did not purport to give Mosley any
control over the fees to be collected from Silverthorne, we have simply addressed the pure legal question
of whether such an agreement could, by virtue of being an assignment or an equitable assignment, have
imposed on Silverthorne a duty to pay a portion of the fees to Mosley. We have answered in the negative. 
Thus, we agree with Silverthorn